Spring Term
1839.

CHANCERY.

## H. & P. Lee *against* Lashbrooke
## and
## Lashbrooke *against* H. & P. Lee.

[Mr. Hord and Messrs. Payne and Waller for the Lees: Mr. Owsley and
Mr. Beatty for Lashbrooke.]

FROM THE CIRCUIT COURT FOR MASON COUNTY.

*April* 20.     Chief Justice ROBERTSON delivered the Opinion of the Court.

In general partnerships, where there is no special agreement as to the profits, the legal presumption is, that they are to be equally divided. So, also, where there is no special agreement as to the services to be rendered by the partners, respectively, the presumption is, that each is to do what he can, for the common benefit. And—

No one of several partners is entitled to compensation for services to the firm, without a special agreement for it. Nor will interest be allowed to any partner, for money advanced to, or deposited with, the firm, for its use, but from the time of a general settlement, or dissolution, unless there is a special contract, or some very peculiar circumstance, to justify it.

Facts & circumstances showing that the general principles above indicated, are ap

IN the absence of any evidence of a contract to the contrary, the legal presumption is that, each of the three co-partners were to be entitled to co-equal shares of the profits of the joint concern, and that each was to contribute whatever of personal service and proper assistance he reasonably could to sustain and promote the objects of the partnership.

In such a case, it is a general rule, as fixed as it is just, that neither of the partners will be entitled either to compensation from the others, for any service voluntarily rendered by him, in the partnership business, or to interest on balances from time to time in the partnership account, or on deposites, or advances of money, for the use of the firm, and before a general settlement or dissolution. To bring a case within any exception from this general rule, resulting from the nature and objects of general partnership and the implied understanding of the co-partners, there must be either a special agreement, or some very special and peculiar state of facts.

As to interest and compensation, in this case, no contract or special state of case appears in favor of any allowance. On the contrary, the facts strongly repel all claim to interest on the one side, or to compensation on the other.

As to interest claimed by H. & P. Lee, for money deposited with and for the use of the firm, several considerations fortify the general rule:

1. Looking to the condition of the parties, and the services expected to be performed by each, it would be

unreasonable to presume that Lashbrooke, upon whom nearly all the burthen of buying and vending the goods was devolved, would have entered into a general partnership entitling his co-partners to equal profits, had not their credit and their ability to assist and sustain the establishment with whatever funds it might need from time to time, been considered by him as an equivalent for his capital and services. Why should H. Lee, especially, receive one third of the profits, without making some extra contribution in the use of money, to counterbalance the extra services of Lashbrooke?

2. Lashbrooke's services appear to have been nearly equal to the interest on moneys advanced at various times by H. & P. Lee; and the value of those services, and interest on balances due from time to time on their individual and joint accounts, would altogether equal, if not exceed, the amount of interest correctly calculated on the funds advanced by them.

3. The state of the accounts and the conduct of the parties during the partnership, and for some time after dissolution, rather imply that there was no understanding or expectation that interest was to be charged against Lashbrooke, for one third of the deposites for the use of the firm.

We are clear, therefore, in the conclusion that the Circuit Court was right in disallowing the claim for interest.

And we are equally clear that, the disallowance of Lashbrook's claim for *extra* services was also right; because it does not appear that he did more than was expected when the partnership commenced; or that, by contract or otherwise, since that time, there has been any unusual or unexpected change in the condition or attitude of any of the partners. It is evident, therefore, that, so far as his services are concerned, there is nothing to repel the implication arising from the character of the general partnership, as originally formed. And, moreover, Lashbrook should not charge for services, without accounting for some interest for an extra equivalent; to wit, the contribution of money on the other side.

Spring Term
1839.

*Lee*
vs
*Lashbrooke.*

Nor do we perceive any error or injustice in charging H. Lee, as the Circuit Court did, with McChord's notes. From his admission, as proved, it may be inferred, that the understanding of the parties was, that he was to be responsible for that debt due to the firm by that son-in-law of his, to whom it was given as an advancement. And this deduction, whether, *in fact,* just or not, is fortified by the uncertain and perhaps insolvent condition of McChord, when he contracted the debt with the firm, and the fact also, that H. Lee seems to have agreed to pay and does not object to pay the accounts of his children with the firm.

But we are inclined to think that, the charge of Amsberry's account to H. & P. Lee, is scarcely justified by the facts reported by the commissioners, or any facts deducible from the record.

And it also seems to us, that P. Lee ought not to be charged with so much of house expenses as was incurred for fuel, candles, &c. used necessarily in the counting room and store.

The good debts due to a partnership may be charged to one of the firm by his consent; and the fact that he has taken and retained the books, may also justify such charge. See the petition and response, *post.*

But we see no just objection to charging P. Lee, as the decree has done, with the good notes and accounts of the firm:—(1.) because he consented to that charge, and, (2.) because, by taking and keeping the books and evidences of debts to the firm, he assumed a right and incurred a responsibility which might justly have justified the charge of perhaps more than the decree has charged. And, as to the account of Ballinger and Dewees, the only debts he objected to, we see no good objection to charging him with them, because it appears that he might have collected them since he has had the books in his possession, and withheld them from Lashbrooke.

One of 3 partners owning the house in which the business was commenced and carried on, it is presumed that he contributed the use of the house as capital, and is not entitled to rent for it, from the firm,—espe-

In charging Lashbrooke with one third of the rent for the store house and appurtenances, it seems to us that the Circuit Judge departed from the principle upon which he refused to allow interest on money advanced and compensation for services rendered. As it appears to have been understood, when the parties entered into partnership, that the business was to be continued in that house, it seems to us that the inference of reason

as well as law, is that the partner who owned the house contributed the use of it, as a part of his share of capital, and as some equivalent for the personal services of his co-partners. And this deduction is strengthened by the fact, that no credit appears to have been ever given to H. Lee for rent, or claimed by him, during the subsistence of the partnership—although he had access to the books, and frequently inspected his account. The use of the house must, in the absence of any fact to the contrary, be deemed to have been, and intended to be, a part of the joint stock contributed by the partner who was not expected to attend personally to the store, and not to be charged against the other partners who were to do all the active business of the concern.

According to the pleadings and proofs, we are of the opinion that there was no error in dissolving the injunction with damages.

Wherefore, the decree is reversed, and the cause is remanded, with leave to make further inquiry as to the expenses charged for fuel, candles &c. for the use of the counting room and store, and as to Amsberry's account; and for another decree according to the principles adjudged in this opinion.

*Spring Term*
*1839.*

*Lee*
vs
*Lashbrooke.*

cially as he was not an active partner.

PETITION FOR A RE-HEARING.

[By Mr. Hord.]

*May 4.*

THE counsel of the Lees would respectfully solicit the Court to reconsider some of the questions decided in this cause.

1. From the most mature reflection they have been enabled to give to this cause, they cannot come to the conclusion that Peter Lee should be charged with the accounts due to the firm, supposed to be good by the commissioners. These accounts amount to the sum of $7374 54 cents. Peter Lee should not be compelled to take those accounts, unless he has done some act that renders it just and proper that he should be charged with them. The Court, in their opinion rendered, considers that he should be charged with them, for two

VIII. 28

reasons: 1st. "Because he consented to the charge. "And, 2d. Because by taking and keeping the books "and evidences of debts to the firm, he assumed and "incurred a responsibility which might justly have "justified the charge of perhaps more than the decree "has charged."

We are inclined to the opinion that the facts of the case will not warrant the conclusion deduced by the Court.

There is no evidence in the cause, other than the decree of the Court, that Peter Lee agreed or consented to be charged with the said accounts, and it is respectfully contended that the statement made in the decree, does not warrant the conclusion that he did assent to take them. It is in these words: "Peter Lee agrees "that the commissioners may charge him with *the good* "*debts* which have not been collected."

The commissioners were required to take evidence on the points submitted to them, and to report it to the Court. They have taken no evidence, and have reported none to the Court, in relation to said accounts.

In the first place, Lee only agreed to take "*the good debts,*" not the old accounts that had been standing for many years, that could not be collected by law. These accounts were not and cannot be considered debts. They have none of the properties of debts. They are not liquidated or certain. They may be barred and avoided by the statute of limitations. They are not legal, but honorable claims; and are not certainly comprehended by the term "good debts."

I am satisfied the Court has been led into a mistake in relation to this charge, by the awkward manner the commissioners follow up this charge, by the objection of Peter Lee to take the debts of Ballinger and Dewees.

In the previous sentence, they say we have charged Peter Lee with all the debts that were deemed good, not that he had agreed to take them, and objected to the debts of Ballinger and Dewees, as I suppose the Court to have understood them.

There is nothing in the cause showing Lee's assent

to take those accounts. He agreed to take the good
debts. He is still willing to take them, amounting to
the sum of $4429 73, but he always has, and now
does, most solemnly protest against all the old accounts
of the firm being thrown upon his shoulders.

2. We will now consider his liability arising from his
taking and keeping the books of the firm.

The firm was dissolved on the 7th day of January,
1830, and the books and papers remained in the hands
and possession of Lashbrooke until the 1st day of Sep-
tember, 1831—nearly one year and eight months; when
Peter Lee and John W. Anderson, the son-in-law of
Henry Lee, took the books and papers to the office of
Reed and Taylor, their attorneys, who had agreed to
assist them in the collection of the said debts. The
books were removed by both Henry and Peter Lee, and
they both state in their answer and cross bills, the cir-
cumstances under which the books and papers were re-
moved; and also state, that on Lashbrooke's return
home, they informed him of the reason of the removal
of the books, and that he could have access to them at
any and all times, to which Lashbrooke replied, that he
should not trouble himself further with them, as he was
glad to get rid of the trouble, &c.

Lashbrooke, in his answer, to this part of the cross
bill, states that, " it is true, after his return, Henry Lee
informed him that the books had been removed; to
which he replied, that his business called him to his
own store-house, and if the books were returned, that
he would give them the same attention he had hitherto
done, but that he could not leave his business every
time a person called, to go to the office to which the
books had been removed."

The office of Reed and Taylor was about forty steps
from the store of Lashbrooke, and Mr. Taylor proves
that Lashbrooke could have had access to the books and
papers almost at any time, and frequently did examine
them.

From the foregoing facts, it appears that the books
were removed to the office of their attorney, by two of

the partners; and that the other partner did and could have access to the books at any and all times. The books and papers remained in the possession of Lashbrooke, for twenty months—a length of time that would bar any account on their books; and it is most respectfully contended that the subsequent possession of the books by Peter Lee, under all the circumstances, cannot render him liable for all of these accounts, and subject him to a loss of nearly $7000.

Peter Lee cannot be liable for these accounts, by his agreement to take *good debts,* nor from his having removed the books and papers as before stated. The debts of Ballinger and Dewees were not the only debts he objected to.

3. It is also believed that the Court has mistaken the facts in relation to the debts of Ballinger and Dewees, amounting to the sum of thirteen hundred and eleven dollars. I presume, from the opinion of the Court, that the Court were of the opinion that these debts had been charged to Peter Lee, by the commissioners. By an inspection of the record, the Court will discover that there is no charge in the pleadings, that those debts were lost by the negligence of Peter Lee. By the interlocutory decree, the commissioners are required to report whether any debts have been lost by the negligence or carelessness of either member of the firm; if so, what debts, and by what partner have they been lost?

In compliance with this portion of the decree, the commissioners heard evidence in relation to the debts of Ballinger and Dewees; reports them bad, but does not charge them to Peter Lee, nor do they report that they have been lost by the negligence nor carelessness of Peter Lee. This report of the commissioners was not complained of, nor excepted to, by either of the parties, in relation to those debts in the Court below, and they did not suppose that there was any doubt as to the propriety of the decision of the commissioners. It will also be seen by the report of the commissioners, that they used as evidence, certain mortgages and deeds of trust from Ballinger and Dewees, to William Lash-

brooke and others, and also the records in the judgments at law of Lee, Lashbrooke & Co. against Ballinger and Dewees; and if the Court shall deem them material in the decision of this question, they pray for a *certiorari* to have this portion of the record certified, and sent up by the clerk of the Mason Circuit Court. They believe that Peter Lee should not be charged with those accounts of Ballinger and Dewees, under all the circumstances of this case. The debts are reported bad by the commissioners, and they do not consider that they were lost by the misconduct of Peter Lee. The books and papers were removed by Henry and Peter Lee, and Lashbrooke did and could have had access to the books and papers at any time. He never urged suit against either Ballinger or Dewees: he had claims against each, and took mortgages to secure his own debts, to the exclusion of the debts of the firm.

4. The Court, in its decision, places Henry Lee's claim for the rent of the store-house, ware-house and pasture, on the same footing as the other claims of compensation for services and interest for the use of money.

We consider that there is a wide and manifest distinction between these claims. It was admitted on both sides, that there was no contract or agreement that Lashbrooke should be paid for extra services, nor that the Lees should be paid interest for the capital they advanced to the firm. There was no difference of opinion on this subject, and there was no attempt to prove any such contract.

But, with regard to this claim for rent, Henry Lee claims it, in his cross bill, and states the contract. The firm were to pay him rent, and he was to keep the property in repair. He claims it by express contract and agreement. Peter Lee, one of the partners, admits the claim in his answer, and he, in his deposition, expressly proves that it was the agreement of the parties, that Henry Lee was to be paid rent for his store house, ware house and lot; that the subject was frequently spoken of, and admitted by all the partners, and that, at one time, he heard William Lashbrook complain of not getting possession of the ware house, say-

ing that he would rather pay the rent himself, than re-
main without it.  He also proves the fact, that the
houses and lots were repaired, and kept in repair, by
Henry Lee, during the fifteen years they were occupied
by the firm.

We contend that Peter Lee is a competent witness
to prove these facts, and his evidence should be entitled
to the more weight, as it is to operate as well against
himself, as his co-partners.

From the pleadings and evidence in the cause, Henry
Lee has established this claim against one of the part-
ners; and as to that partner, will be entitled to recover
the one third of this rent, and, as we contend, it will
authorize the charge against the other partner.

5.  We are of the opinion that the Court should allow
ten per cent. on the judgment at law suspended by the
appeal in this case.  Lashbrooke was not entitled to the
injunction.  The Chancellor had no jurisdiction to en-
join the judgment of Lee, until the settlement of their
accounts.  *Duncan* vs. *Lyon*, 3 *Johnson's Chy. R.* 359;
*Tribble* vs. *Taul*, 7 *Monroe*, 457; *Livingston* vs. *Livings-
ton*, 4 *Johnson's Chy. R.* 292; 6 *Johnson's Chy. R.* 322;
11 *Ves.* 24; 12 *Ves.* 346.

As the injunction in this case was improperly grant-
ed, and properly dissolved, and as the judgment at law,
and the decree dissolving the injunction, has been sus-
pended by the appeal in this case, *Lashbrooke* should pay
ten per cent. on the affirmance of that portion of the
decree.

The Court is most respectfully requested to re-con-
sider the points suggested in this petition.

*Crittenden & Hord, for Lees.*

Response to the Petition.

[By the Chief Justice.]

An order refer-
ring the adjust-
ment of partner-
ship accounts to
a commissioner,
states that one

In the interlocutory decree referring the case to audi-
tors, the Circuit Judge said, " Peter Lee agrees that the
"commissioners may charge him with the good debts
" which have not been collected."

Having ascertained, by the agreement of the parties and otherwise, that certain enumerated accounts, amounting to $7374 54, and also certain enumerated notes, amounting to $4429 73, were *good*, and that other described notes and accounts, to a considerable amount, were bad, and others doubtful—the auditors charged *Peter Lee* with the first class, or reported good debts, only; which amounted, in the aggregate, to $11,804 27.

Peter Lee's only exception, in the Circuit Court, to this part of the report of the auditors, was that he ought not to have been charged with " the *whole* of the debts" reported as good, "because *he* says the evidence in the "cause proves that *some* of the debts are not good." *But there was no such evidence.*

of the partners had agreed to be charged with the good debts of the firm; and he excepts to the commissioner's report, only because some of the debts so charged to him, were not good: this is conclusive evidence (here) of the agreement.

Thus far we have conclusive evidence upon the record, showing that Peter Lee did agree to take all the good debts. And, as his exception did not specify as not good, any debt with which he had been charged; and as the record, not only exhibits no fact tending to show that any one debt was even doubtful, which had been charged to him as a good debt, but should be understood as importing that all the debts enumerated in the class reported good, had been either proved or admitted to be good—we did think, and still think, that there was no error in overruling his exception, and approving the report of the auditors.

Nor can we doubt that accounts as well as notes, due the firm of Lee, Lashbrooke and Lee, were comprehended in Peter Lee's agreement to be charged with "the good debts." But even if that agreement, as originally understood, embraced notes only, as he made no exception to the report because it charged him also with good accounts, he then tacitly assented to it in that respect.

An agreement by one partner that the good *debts* of the firm, shall be charged to him, in the settlement of the accounts, embraces book accounts, as well as bonds and notes.

And, as suggested in the original opinion, there was a sufficient reason for Peter Lee's agreement to take the good debts, arising from the fact, that he had kept the possession of evidences of the debts for several years— and ought, therefore, to have been more than willing to be charged *only* with such of the debts as still remained good, and collectible—especially as debts, once good,

had been lost probably by his negligence. Besides, without this consideration, he might have preferred the good debts to any claim on Lashbrooke; and if he did not prefer them, or had not agreed to take them in the first instance, the record nevertheless exhibits facts enough to conclude him as to this matter, and to show that he comes now too late with his objections—after the recital in the record of the fact, that he had agreed to take the good debts, and after his virtual admission of the truth of that recital, by never objecting to it or questioning its accuracy, in the Circuit Court, and by his excepting to the report of the auditors as to the charge of "good debts," only on the ground that all the debts, which were charged against him, were not good.

Moreover, as it does not appear that any debt charged against Peter Lee, was not then good and available, and it does appear that he alone, for some years, had assumed to act as the collector of the firm and the keeper of its books, notes and accounts—we would not be inclined to change the report and decree in this particular, even if he had never consented to take all the good debts which he had permitted to remain still uncollected, without showing any other reason for the noncollection of them, than his own voluntary forbearance or negligence.

We suggested in the opinion heretofore rendered in this case, that a charge against Peter Lee, of the doubtful debts of Ballinger and Dewees, might not have been inequitable, because it appeared altogether probable, and almost certain, that he might have collected or secured those debts, had he not been unreasonably indulgent or supine. But neither the report of the auditors, nor the decree of the Circuit Court, charged him with the amount of those two debts. Nor does the mandate of this Court apply to or embrace either of them.

And as Peter Lee's conduct, in respect to those debts, was not made a subject of litigation in the pleadings, and Lashbrook did not except to the report of the auditors, for failing to charge Lee with them, we are not disposed to disturb the decree for approving the report

in this respect, and the more especially, as exoneration from liability for any of the lost or doubtful debts, may have been one of the motives which induced Peter Lee to agree to be charged with all the good debts, and as moreover, that agreement itself may imply that he was not to be charged with any debts that were not good. But lest the opinion heretofore rendered may, as to this matter, be understood by the Circuit Court as requiring a change in its decree in relation thereto, it is deemed proper to suggest explicitly that as to the debts of Ballinger and Dewees the decree of the Circuit Court is approved, and that the original opinion is modified by striking out what was said therein on that subject.

Spring Term<br>1839.<br>Lee<br>vs<br>Lashbrooke.

As to the house rent, we are still well satisfied that Lashbrooke should not be charged with anything on that account. Peter Lee's testimony concerning that matter should not be considered available, because Henry Lee and himself seem, throughout, to have co-óperated as one joint party, against Lashbrooke, as the only antagonist or other party; and because, moreover, P. Lee's recollection, as recited by himself, is inconsistent with the intrinsic reason of the case, and with the deductions of law from facts admitted, and strong presumptions arising from the condition and conduct of the co-partners, and the nature and extent of the capital contributed by each.

Believing that a re-argument of the case on these grounds, would be unavailing, we therefore overrule the petition for a re-hearing.