HUGH MAHER, impleaded, etc.,

*v.*

MARIA BULL, Administratrix.

1. DISSOLUTION OF PARTNERSHIP — *in chancery — for default of one of the partners.* Where the articles of co-partnership between several persons, provide that one of the partners shall furnish a supply of the commodity in which the firm is to trade, and the others are to make the sales and pay over at certain stipulated periods, out of the proceeds of the sales, to the partner furnishing such commodity, the amount of the cost thereof, a failure on the part of those members of the firm whose duty it was to do so, to pay over the proceeds of the sales as required by the contract, will authorize the partner injured by such failure to maintain a bill in chancery for a dissolution of the partnership.

2. SAME — *whether mutual failure to comply with covenants will be considered.* The partners thus being in default in not paying over the proceeds of sales, as agreed upon, would not be entitled to damages in such proceeding, for a failure on the part of the partner who had agreed to supply the article, to furnish what was necessary for the business.

3. SAME — *of fraudulent conduct on the part of one partner.* And the partners who failed to pay over the money as stipulated, would be cut off from

7 — 44TH ILL.

any claim for damages by reason of the other partner failing to supply what was necessary of the commodity to be furnished for the business, if they made a colorable sale of the stock on hand, inconsistent with the legitimate purposes of the partnership.

4. SAME — *statement of account between the partners — upon what basis.* In stating the account between the partners in such a case, where it appeared that the partners who had control of the sales, had made a sale of a part of the stock of the firm, in fraud of the rights of the other partner, such sale should be considered as a sale for cash, and charged against the partners making it, accordingly.

5. If the firm should become liable for, and pay damages by reason of the failure of the partners controlling the sales to fulfill their contracts of sales, no portion of such damages should be charged against the other partner in stating the account between them, as the partners whose special duty it was to see that such contracts were complied with should not take advantage of their own wrong.

6. Where there are debts due the firm, and uncollected, at the time of stating the account between the partners, such debts should not be considered in making up the statement, unless they are of such character, that, under the contract, they are specially chargeable to one of the partners.

7. RECEIVER *to collect debts.* In such a case, on bill filed by one partner for a dissolution, and to enjoin the other partners from collecting debts, a receiver will be appointed to collect the debts, and be directed to make proper distribution of the sums received by him.

8. *ALLEGATIONS AND DECREE — must correspond.* Parties can only recover on the case made in their pleadings.

9. So upon bill filed by one partner against another for a dissolution of the partnership, and for an account, the complainant cannot be allowed damages against the defendant for a failure in duty on the part of the latter, unless there are allegations in the bill upon which such relief can be based.

10. Nor can the complainant have specific relief based upon a sale made by the defendant in fraud of the complainant's rights, except the latter furnish the basis for such relief by appropriate allegations in his bill.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. D. C. & I. J. NICHOLES, for the appellants.

Messrs. HERVEY, ANTHONY & GALT, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 16th of April, 1860, Cadwallader Bull, of Buffalo, now deceased, and whose wife, as his administratrix, is the appellee herein, entered into a partnership in the coal business with Maher & Kelly of Chicago, who were then engaged in that trade. By the articles of copartnership, Bull was to furnish coal from Buffalo; Maher was to provide a coal yard, fixtures, and carts, and Kelly was to give the business his personal attention and supervision. The expenses of the business were to be divided equally between the parties, except the salary of the book-keeper, which was to be paid by Bull. Maher & Kelly were to bear all losses arising from sales to irresponsible parties. After payment of expenses all moneys arising from sales were to be paid over weekly to the book-keeper for Bull, to the amount of the cost of the coal. Bull was to furnish all the coal needed for the business. On the 1st of September a supplemental article was entered into, providing that Bull was to have no interest in coal not furnished by him.

On the 11th of October, 1860, Bull filed a bill in chancery against Maher & Kelly, praying for a dissolution of the partnership, an account, and an injunction against Maher & Kelly restraining them from making further sales or collections. An injunction was granted, and the case coming on for a final hearing at the March Term, 1866, of the Superior Court, Maher & Kelly were decreed to pay to the complainant six thousand six hundred and seventy-six dollars and eleven cents. The defendants appealed.

The bill prays a dissolution because of an alleged failure to pay over the proceeds of sales as required by the articles of partnership. The decree of the court below finds such failure to have been shown, and finds, we think, correctly. It appears by the testimony of Hunt, the book-keeper, that Maher & Kelly were in arrears to a considerable amount. The report of the master states the cash receipts, to the time of filing the bill, at less than the deposition of Hunt; but, as the deposi-

tion on this point is positive, and given from the books of the firm, and not contradicted, and as the quantity in tons stated in the report is very nearly the same as the total of all the sales given by the witness in pounds, we presume the difference in value is a clerical error on the part of the master.

There having been this failure to pay on the part of Maher & Kelly, Bull had the right to file his bill, and Maher & Kelly can take nothing by the cross-bills filed by them, in which they claim damages for failure on the part of Bull to furnish the coal necessary for the business. They were themselves in default, and, besides, the proof shows a sale by them to Roberts, on the 2d of October, 1860, under circumstances which would effectually cut them off from a claim of this character. It was evidently a merely colorable sale, and inconsistent with the legitimate purposes of the partnership.

But while the Superior Court did not err in decreeing for the complainant, the decree was for too large a sum, and proceeds in some respects upon an incorrect basis. No damages can be allowed Bull for the failure of Maher & Kelly to deliver all the coal claimed by Bouton, because there are no allegations in the bill upon which such relief can be based. The sale to Bouton is not mentioned in the bill, and parties can only recover on the case made in their pleadings. The only relief in regard to the Bouton sale which can be given, is to charge Maher & Kelly, in stating the account, with the value of the coal which they failed to deliver at the same rate at which it was charged to Bull when he took the Bouton notes, that is, the price at which it was sold to Bouton.

So as to the sale to Roberts. No specific relief can be based upon the fact that it was fraudulent, for there are no allegations in the bill upon which such relief can be given. The complainant, if he desired special relief on this ground, should have amended his bill on discovering the facts connected with the sale, and thus have brought the question properly before the court.

The decree of the court below must be modified, and should be made upon the following principles:

The cost of the coal furnished by Bull was....... $6,879 41
The total profit on all the coal as reported by the
   master was $1,962.11 of which one-third belongs
   to Bull, being.............................        654 03
                                      $7,533 44

On the other hand, Bull is chargeable with cash
   paid to him including the Bouton notes........ $3,150 06
One-third of the expenses estimated by the Su-
   perior Court in full at $1,202.98, of which one-
   third is.....................................        400 99
Salary of book-keeper to be paid by Bull.........        247 02
Wastage and shrinkage on coal, estimated at 2 per
   cent or 30 tons, of which one-third is chargeable
   to Bull......................................         50 00
                                       $3,848 07

Deducting this sum from the $7,533.44 we have a balance in favor of Bull of $3,685.37 with interest from October 11, 1860, to date of decree. While, however, this amount is due Bull from the partnership assets, it would be obviously improper that a decree should be pronounced against Maher & Kelly personally for such sums as they may have been restrained by injunction from collecting, and perhaps may never collect. The court below will therefore direct another reference to the master for the purpose of ascertaining what amount is still uncollected, if any, on the coal sold by Maher & Kelly, and furnished by Bull, and if there is any thing uncollected a receiver will be appointed to make the collections, and one-third of the amount when collected will be paid over under the order of the court, to the administratrix of Bull. If, on the report of the master, it shall appear that all the accounts have been collected by Maher & Kelly, their agents or otherwise, then the court will decree the payment by Maher & Kelly of the above sum of $3,685.37, with interest at six per cent from October 11, 1860. If it shall appear that a part of said accounts

are still unpaid, then the court will deduct one-third of the amount of accounts unpaid from this sum of $3,685.37, and will render a decree ·against Maher & Kelly for the remainder. In estimating the amount of coal sold on credit and unpaid, the court will consider the sale to Roberts for $2,600 as a sale for cash. If it shall appear that any of the coal has been sold to irresponsible parties, the court will treat Maher & Kelly as responsible for the amount of such sales, and this question can be referred to the master. To the sum of $3,685.37, above directed to be paid, must be added the value of the coal which Maher & Kelly failed to furnish Bouton, and which they should account for to the complainant, since the Bouton note is included in the $3,150.06 charged to Bull as cash. Bouton swears that the amount furnished by Bull, after the failure of Maher & Kelly to supply him, was 137,155 pounds of Lehigh and 77,935 pounds of Blossburgh. No damages are to be allowed, but the value of this coal is to be ascertained at the rate per ton which Bouton was to pay by the terms of his purchase, and interest at six per cent from October 11, 1860.

So far as this proposed decree goes, the obligation of Maher & Kelly is clearly joint. They were doing a coal business as partners independently of Bull, and the articles of partnership not only make them jointly responsible for bad debts, but their joint answer is a clear admission that the coal from Bull was received and sold by them jointly. No attempt is made to sever their liability. 'The decree is reversed and cause remanded for further proceedings.

At the September Term, 1867, a rehearing of this cause was granted, upon the petition of the appellant, in order that the court might further consider of the mode in which the account between the parties should be stated, and the following opinion was filed, in respect thereto :

Per CURIAM: A rehearing having been granted in the case for the purpose of permitting the mode in which the account should be stated to be again brought to the consideration of the court, we have again examined the questions involved, and

the opinion of a former term will still stand as the opinion of the court, subject to the following modification: The Superior Court, in stating the account, will direct the master to allow to Maher & Kelly a credit on the balance due Bull for one-third of all the debts and liabilities of the firm at the time of the commencement of this suit, if such debts and liabilities grew out of matters as to which the Superior Court shall deem Bull to be justly chargeable. He is not, however, to be charged with any part of the damages which Maher & Kelly may have paid for non-delivery of coal according to their contracts. To allow them contribution for such damages would be to allow them to take advantage of their own wrong. Their inability to deliver coal upon their contracts must be attributed to their failure to keep their covenants in their articles of co-partnership with Bull, and to their fraudulent sale of their stock of coal to Roberts.

*Decree reversed.*