### SIDNEY RANDLE *v.* A. H. RICHARDSON.

1. PARTNERSHIP. *Profits. How divided in chancery.*
   A Chancery Court, in winding up a partnership, will hold the partners
   equal sharers in the profits, in the absence of evidence to vary the
   rule.

2. SAME. *Partnership stock appropriated by one partner.*
   Where one partner, having determined to end the partnership, takes an
   inventory of the stock, and, charging himself with the inventory
   value, mixes the stock with goods of his own, and proceeds to sell
   both together, keeping no separate account of the partnership stock
   and being unable to tell how much thereof he has sold when he tes-
   tifies, it is proper to charge him with the inventory value for the
   remnant of the partnership stock in winding up the partnership in
   chancery.

3. SAME. *Same. Chargeable with value.*
   Where agricultural implements were kept by one partner, on the practical
   dissolution of the firm, a decree, in winding up the concern in chan-
   cery, that he should be charged with their value, will not be disturbed.

4. SAME. *Services of partner in firm business.*
   In the absence of a special agreement between the partners that one
   partner is to be paid for his services in the business of the firm, he is
   not entitled to compensation for such services.

5. SAME. *Claims due firm taken by one partner.*
   Under some circumstances one partner may be charged with debts due
   the partnership, without proof of his collection of the money; but
   where, on the practical dissolution, one partner has helped himself
   to such of the solvent and available claims as he chose, the fact that
   the other took the firm books, carried them away and kept them,
   it not appearing that the claims therein were collectible or had been
   collected, but it appearing that they were not worth twenty-five cents
   on the dollar, does not justify such a charge against the partner who
   took the books.

6. SAME. *Double charge.*
   Where, in a planting partnership, one partner was to furnish the land
   and be paid rent, and, on dissolution, his copartner claimed he had
   paid the rent by relinquishing half the corn, it is error to charge him
   with the corn, without crediting him with the rent.

7. SAME. *Dissolution. Bill in chancery. Practice in winding up concern.*
   On a bill by a partner against his copartner to wind up the concern on
   the ground of disagreement between the partners, there being nothing

to show their respective interests in profits, the case should be referred to a master, with power to examine the partners, to cause production of the books of the firm and to state an account between the parties on the basis of equality as to sharing in the profits, each partner being credited with his advances to, and charged with his receipts from, the partnership.

APPEAL from the Chancery Court of Monroe County.

Hon. O. H. WHITFIELD, Chancellor.

*Davis* and *McFarland*, for the appellant.

*Baxter McFarland*, on the same side, filed an able and elaborate brief of fifty-two pages, making, among many others, the following points : —

1. The exceptions to the answer were well taken, and should have been sustained. Story Eq. Pl. §§ 852, 853; Gresley Eq. Ev. 17.

2. The injunction was improperly dissolved.

(1.) The bill charges that the copartner was making away with the firm assets.

(2.) The complainant avers that he was to receive two-thirds of the profits. This is not properly denied. This is confirmed by the witnesses.

(3.) He also claims $600 a year for services in superintending the farm.

(4.) Randle was entitled to rent, and the court charged him with the identical crib of. corn, which Richardson states he turned over for the rent.

(5.) Richardson had all the valuable notes and accounts, and other firm assets. Independently of firm means he had nothing liable to execution.' Story on Partnership, §§ 178, 179, 181.

3. The decree settling the principles of the account, and the account itself, were erroneous in disregarding the points before mentioned, and also in charging Randle with uncollectible claims, the goods and the farming implements.

4. There should have been notice by the master of the taking and stating of the account in the case. *Felder* v. *Wall*, 26 Miss. 595; *Knox* v. *Bank U. S.*, 26 Miss. 655.

*Murphy*, *Sykes*, and *Bristow*, on the same side, also filed an able brief, arguing the facts at great length, and contending, —

1. The exceptions to the answer should have been sustained. Story Eq. Pl. § 867, note 2.

2. The injunction should not have been dissolved. High on Injunctions, 881, 882, 886.

3. The court erred in deciding that Randle and Richardson were equal partners.

4. Randle should not have been charged with the face of the accounts on the books. 8 Dana, 214, decides no such thing. The true rule is stated in 9 Gill & J. 280; 2 Dev. & Bat. Ch. 232; 2 Desaus. 471.

5. Randle should have been allowed for superintending the planting operations, and rent of his land.

6. Notice by the master was necessary. *Stegall* v. *Coney,* 51 Miss. 323; *Cobb* v. *Duke,* 36 Miss. 60.

7. As to conclusiveness of Chancellor's decree on testimony, see *Partee* v. *Bedford,* 51 Miss. 84.

*Houston* and *Reynolds,* for the appellee, commented at great length on the testimony, and controverted the positions taken by opposing counsel, citing, among others, the following authorities : —

As to the respective interests of the partners in the profits of the concern, the presumption is that they were equal sharers therein. *Honore* v. *Calmesail,* 1 J. J. Marsh. 507; *Lee* v. *Lashbrooke,* 8 Dana, 214; Gow on Partnership, 10.

In addition to the legal presumption, there is evidence to show that they were equal partners; and this court, under such circumstances, will not reverse the Chancellor on the question of fact. *Dickson* v. *Parker,* 3 How. (Miss.) 219; *Dillard* v. *Wright,* 11 S. & M. 455.

CAMPBELL, J., delivered the opinion of the court.

Randle and Richardson had been partners in mercantile business, and in planting, and had disagreed. Randle exhibited his bill in chancery against Richardson to enjoin him from collecting debts due the firm, and from disposing of certain things alleged to be assets of said partnership, and for a statement of partnership accounts, and settlement on the basis claimed by Randle. Injunction was issued as prayed for, and served, and Richardson answered the bill. There was disagreement between the parties as to the terms of the partner-

ship, Randle claiming two-thirds of the profits, and Richardson claiming half; and there was controversy as to how much each had received of the firm assets, and how each stood towards the partnership.    Exceptions to Richardson's answer were overruled, and the injunction was dissolved.    Testimony was taken on both sides, and a decree was made settling the principles on which an account between the partners was to be stated, and it was referred to a master to state an account accordingly, and it was done ; and the account, as thus stated, was reported to. the court, and approved, and a final decree rendered in pursuance of it.    From this Randle appealed, and has assigned a multitude of errors, none of which will be specially noticed, except as they relate to the interlocutory decree of reference.    The evidence is unsatisfactory as to the proportions in which the partners were to share in the profits. It is doubtful whether  there was any definite agreement between the parties on this subject or not.    The Chancellor held them to be equal partners in the profits.    This is the rule in the absence of testimony to vary it, and the conclusion of the Chancellor on this point will not be disturbed.    The evidence shows that, in the spring of the year 1873, Randle, having determined to put an end to the partnership, procured the services of Mr. Sims, and took an inventory of the stock of merchandise on hand, amounting to $1,200 ; and afterwards bought other merchandise on his own account, and put it in the same house with  the remnant of partnership goods, and proceeded to deal with all as his own, after charging himself with the amount of  the inventory of partnership stock as aforesaid.    He sold such of the remnant of partnership goods as he had calls for, in common with the new stock he purchased on  his  own  account, did  not  keep a  separate account of the partnership goods, and was not able, when he testified as a witness, to say what he had sold of them, nor what he had realized from them.    In this state of the case it was proper to charge Randle with $1,200 for the remnant of the stock of the partnership so appropriated by him and confused with his own goods.

There were agricultural implements belonging to the partnership, which were kept by Randle.    The testimony is not

very clear and satisfactory as to these articles, but the decree that Randle should be charged with *their value* will not be disturbed.

Randle claimed an allowance of $600 a year for 1871 and 1872, for his services as manager of the planting operations of the partnership. There is no evidence of a special agreement between the partners that Randle was to be paid for his services in the business of the firm, and, according to the well-settled rule, he was not entitled to compensation for his services. Story on Partnership, § 182, and authorities there cited.

The decree of reference directs that Randle shall be charged with the amount of the claims due to the partnership, without reference to whether they had been collected by him, or were collectible. This proceeds on the idea of a *conversion* by Randle of the claims, by his taking charge of the books of the partnership in the spring of 1873, and continuing to hold them, and refusing Richardson access to them. The evidence shows that when the practical dissolution of the partnership occurred in the spring of 1873, Randle took charge of the books of the firm, which had been kept at the store by Richardson, and carried them away. It also appears that Richardson had helped himself to such of the solvent and available claims of the partnership as he chose, and had proceeded to collect them, with a view to get his share of the profits of the business. It did not appear that the claims due the partnership, as evidenced by the books and notes and accounts in Randle's hands, had been collected to any considerable amount by Randle, or that they were such as could be collected. Richardson could not state that they had been collected or could be. Randle testified that, for the most part, they were on insolvent persons, and that he had not collected as much as $20 on the whole, and that they were not worth more than twenty-five per cent of their nominal amount. There was no satisfactory evidence of the amount due by the books as taken charge of by Randle. Richardson exhibited with his answer a statement of the amount of claims due the partnership, taken by Randle as aforesaid, "*estimated*" by Richardson. The books were not produced, nor ordered to be, and

the master, in executing the decree of reference, accepted as true the "estimate" by Richardson of the amount due to the partnership, as shown by the books taken charge of by Randle.

It was manifestly erroneous to charge Randle with the nominal value of the claims due the partnership. *Bush* v. *Guion*, 6 La. Ann. 797; *McRae* v. *McKenzie*, 2 Dev. & Bat. Eq. 232; *Richardson* v. *Wyatt*, 2 Desaus. Eq. 471; *Grove* v. *Fresh*, 9 Gill & Johns. 280; *Maher* v. *Bull*, 44 Ill. 97; *Hollister* v. *Barkley*, 11 N. H. 501. It is doubtless true, that, under some circumstances, one partner may be charged with debts due the partnership, without proof of his collection of the money; but the case, as now presented, did not justify such a charge against Randle. *Lee* v. *Lashbrooke*, 8 Dana, 214; *Bush* v. *Guion, ubi supra.*

The decree of reference fails to direct the master to credit Randle with the rent of the land furnished by him for 1872. The parties agree that rent was to be paid for 1872, and Richardson should have been charged with his half of that. Richardson, in his answer, admits that Randle was to have rent for his land in 1872, but denies that any *amount* was agreed on, and claims that there was not as much land as Randle asserts in his bill, and that it was not worth as much per acre as claimed by Randle. In his answer, Richardson did not assert that he had paid the rent, but in his evidence he said that he had paid his part of it to Randle, by relinquishing to him his half of a crib of corn containing twelve or fifteen hundred bushels. Either the corn should be treated as firm assets, and accounted for as such in the settlement, or it should be treated as having extinguished the rent, and no charge should be made against Randle for the corn. But Randle was charged for this corn, and was not allowed any thing for rent for his land in 1872. This is clearly erroneous.

This cause should be referred to a master to state an account between the parties on the basis of equality between the partners as to sharing in the profits of the partnership business, after repaying to Randle the capital he furnished. Each partner should be credited with his advances to, and charged with his receipts from, the partnership. Randle should be charged

with $1,200 for the remnant of the stock of merchandise, and with the value of the agricultural implements which came to his hands, to be ascertained by evidence of their value at the time he received them. The books should be produced before the master, and investigated by him; and he should examine Randle and Richardson, if he thinks proper, as to any matters connected with said books and business; and Randle should be charged with all sums received by him on account of claims due to said partnership. The master should be invested with full power to take the testimony, not only of the parties, but of others, with a view to ascertain the real state of accounts between the parties. With the books before him, the master, by the aid of such testimony as can be obtained, will be enabled to approximate justice between the parties. A state of case might arise which would warrant charging Randle with the nominal value of claims due the partnership received and held by him; but, on a reference to a master, he will have an opportunity to avoid such a result.

The decree will be reversed, and the cause remanded, to be proceeded with in accordance with this opinion.