(15 App. Div. 561.)

### RODGERS v. CLEMENT.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

1. PARTNERSHIP—INTEREST ON ADVANCEMENTS BY PARTNER.

    Interest will not be allowed on money advanced by a partner for the use of the firm, where the partnership agreement was that such partner should make his contribution to the firm by furnishing the capital, while his co-partner should supervise the work.

2. SAME—EXPENDITURES BY PARTNER—CONTINGENT EXPENSES.

    A partner will not be allowed for "contingent expenses" on behalf of the firm, where the amount was not taken from any items of expense kept by him, but was ascertained by taking the difference between the debit and credit sides of his account so as to make it balance.

3. SAME—ILLEGAL EXPENDITURES.

    A partner will not be allowed on his accounting for moneys paid out to persons whose names he would not disclose because the disclosure would tend to criminate him.

Appeal from judgment on report of referee.

Transferred from First department.

Action by John C. Rodgers against Frank N. Clement. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

L. Laflin Kellogg, for appellant.

F. R. Minrath, for respondent.

WILLARD BARTLETT, J. This is an action for an accounting between partners, in which the defendant, after a trial before a referee, has recovered a money judgment of $5,280.27 against the plaintiff. The undertakings of the partnership were the construction of a railroad at Drum Point, in Calvert county, in the state

of Maryland, and the building of the Niagara power tunnel at Niagara Falls, in the state of New York. The present controversy arises chiefly out of the Maryland enterprise. Upon this appeal the plaintiff complains of the action of the referee in two respects, and in two respects only. He claims to be entitled to a credit of $5,860.93, which the referee refused to allow him upon the accounting, for interest on money which he contributed or procured and furnished for the use of the firm in carrying on the firm's work in Maryland. He also objects to a charge in the account of $2,095 in behalf of the defendant against the firm, on the ground that it represents expenditures some of which are not proved to have been made at all, and others of which, if made, were for unlawful purposes, not sanctioned by the plaintiff or known to him. We agree with the learned referee before whom the case was tried that the plaintiff contributed the sums on which he now claims interest without any agreement, express or implied, that he should receive interest thereon, and expecting to be paid for the use thereof only by his share of one-half the profits. The contract of partnership was oral. In order to procure the Drum Point contract, it was necessary to raise and loan the sum of $15,000 to the persons who controlled it. The plaintiff undertook to raise and loan this amount, and did so. His contention is that, beyond this, no agreement was made between him and the defendant as to the amount of capital to be furnished by either; but the defendant testifies that, while no special amount of capital was agreed upon, the plaintiff agreed to furnish whatever money was necessary, in addition to the $5,000 or $6,000 which the defendant was able to put into the work. The profits of the enterprise were to be divided equally between the partners. Nothing was said on the subject of interest upon the amount of capital that either might contribute. The plaintiff in fact supplied most of the money needed to carry on the Drum Point contract, and the defendant in fact did most of the work. The referee, upon conflicting evidence, has held that the defendant's version of the partnership agreement is correct, and we cannot say that he is wrong in this respect. Upon the terms of that agreement, and upon the action of the parties under it, depend, to a great degree, the question whether the plaintiff is entitled to interest upon the money which he furnished. The proof warranted the referee in finding that the plaintiff's principal contribution to the joint undertaking was the capital which he supplied, while the defendant's principal contribution was his active supervision of the work in Maryland. In this feature the case resembles Jackson v. Johnson, 11 Hun, 509, modified in 74 N. Y. 607, but not on the question of interest (see Abb. Dig. N. Y. p. 68, par. 21); for here it may be said, as was held there, that the parties considered the one contribution equal to the other, and that each partner was to find his compensation in his equal share of the profits. A still closer likeness to the case at bar may be found in Lewis v. Lumber Co., 14 N. Y. St. Rep. 302, which was an action to dissolve a partnership based upon an oral agreement, and for an accounting between the partners. The plaintiff, prior to the

joint undertaking, had procured a contract for furnishing a quantity of ties to the Delaware & Hudson Canal Company. The referee who tried the case found that, in consideration of the assignment of this contract to the defendants as security, they undertook, by the agreement constituting the co-partnership, to advance the money necessary to fulfill the contract, and to assist actively in its performance; also, that the plaintiff and an associate were to devote their time to the purchase and shipment of the ties, and that the profits were to be divided equally between the parties. "In the absence of any agreement to pay interest on advances," said Judge Alton B. Parker, speaking for the general term of the Third department, "the referee was justified in construing the agreement to mean that the defendant would furnish the money required, for the privilege of sharing in the profits of the contract which plaintiff had procured. Interest was therefore properly disallowed." A similar ruling in regard to the right of a partner to be allowed interest on the capital which he furnishes as against the work done by his co-partner was made by the general term of the Fourth department in Sanford v. Barney, 50 Hun, 108, 4 N. Y. Supp. 500, where the opinion was written by Martin, J., now of the court of appeals. The law applicable to this branch of the case at bar is well stated in T. Parsons on Partnership (4th Ed., §§ 155, 156), in these words:

"Whatever any one [partner] does, he has no claim for anything beyond his equal share of the common benefit, without the consent of his co-partners. Upon the same principle, no partner is entitled to interest on moneys advanced to or deposited with the firm for its use, unless there be a special agreement to that effect. There is no established rule as to the allowance of interest between partners. The circumstances of each particular case must determine." See, also, Perley, Interest, 70.

The authorities already referred to show that interest has invariably been refused where the circumstances resembled those presented here. Most of the cases cited in behalf of the appellant are readily distinguishable in their facts. In Lloyd v. Carrier, 2 Lans. 364, the partner was held to be entitled to interest on advances not required of him by the co-partnership agreement. The advances spoken of in Beach v. Colles, 85 N. Y. 511, 515, seem to have been made, also, without any previous obligation to make them. The question of interest involved in Collender v. Phelan, 79 N. Y. 366, related only to interest on advances made by a surviving partner, in paying the indebtedness of his firm, to an amount in excess of the firm moneys in his hands. In Morris v. Allen, 14 N. J. Eq. 44, the chancellor expressly says that there was no agreement to contribute capital, whereas in the present case, according to the defendant, the plaintiff expressly agreed to furnish whatever money should be necessary, over and above the comparatively modest contribution of the defendant. So, also, in Baker v. Mayo, 129 Mass. 517, it did not appear that there was any agreement between the partners on the subject of the amount of capital which each was to contribute. The partnership under consideration in the Mississippi case (Berry v. Folkes, 60 Miss. 576) contemplated

the purchase on credit, and the ownership and management, of an improved and arable plantation. The purchase was wholly on credit, and payment was made in the promissory notes of the partners falling due annually over a period of five years. It was held that an agreement by one of them to advance money necessary to the prosecution of the partnership business did not authorize the conclusion that he did not intend to charge interest for the money thus advanced. But there was a radical difference from the case at bar, in the fact that the joint undertaking involved no actual participation in the work of the partnership by either partner. One of them is described as a merchant and a man of large property; the other, as a lawyer in full practice; and both knew that neither could go upon the land and superintend operations there. The partner who made the advances therefore assumed more than an equal share of the burdens of the enterprise, in furnishing the money, while in the present case the contributions of the plaintiff to the capital may fairly be regarded as having been offset by the actual services performed by the defendant in Maryland. In Hodges v. Parker, 17 Vt. 242, it does not appear what were the terms of the partnership agreement. The cases which most nearly sustain the position of the appellant with reference to this question of interest are Ligare v. Peacock, 109 Ill. 94, and In re German Min. Co., 4 De Gex, M. & G. 19. In the first of these, one partner in an equal partnership was held to be chargeable with interest on the amount of capital which was contributed by the other partner in excess of one-half. In the English case, the court, with manifest hesitation, allowed interest to shareholders in a mining company, which was really a partnership, upon moneys advanced by them for the purposes of the company. The weight of authority, however, upon a review of the many decisions which I have examined bearing upon the subject, appears to be in favor of the proposition that in the absence of a special contract, a controlling usage, or peculiar circumstances showing that the payment of interest was contemplated, a partner who advances money to or for the benefit of his firm, in the firm business, is not entitled to interest thereon. Lee v. Lashbrooke, 8 Dana, 214; Godfrey v. White, 43 Mich. 171, 5 N. W. 243; Gilman v. Vaughan, 44 Wis. 646. The suggestion is made that the admission and averment in the answer that the plaintiff loaned the co-partnership certain sums of money, all of which have been repaid, may be regarded as an acknowledgment of an obligation to pay interest on the part of the defendant. I agree with the learned referee that the language of the answer should not receive this construction, as it was evidently used without reference to any claim of interest, and very probably referred to the loan of $15,000 to the parties from whom the Drum Point contract was obtained.

While, for the foregoing reasons, I am satisfied that the plaintiff's claim for interest was properly disallowed, I think the defendant was credited with too large an amount on account of what are called "extraordinary expenditures in Maryland." He was allowed to charge the firm with $2,095.05 for these expenses.

Into this sum entered $1,195.05, "contingent expense," alleged by the defendant to represent expenditures made by him for the benefit of the co-partnership, of which, however, he could not give the details, and for which he had no vouchers. The manner in which he arrived at the figures is thus stated in his own testimony:

"Before I put the figures $1,195.05, I footed up the column. I footed up the cash on the credit side, and I found that it required $1,195.05 to balance; and then I made the entry of December 31st, of just the sum that was required to balance. I made the contingent expenses just exactly the difference between these two columns of figures, so as to balance this account. I did not take it from any items of expense that I had, but simply to get rid of the cash I was charged with on the books. That is always the way I found the item of contingent expenses."

It thus appears that the amount of this item was fixed by a process of mathematical guesswork. The defendant ascertained what sum he was not otherwise able to account for, and then guessed he must have used it for contingent expenses. The proof does not seem to me to be substantial enough to justify this charge against the firm.

It was also error to charge the firm with $600 which the defendant testified that he paid out to "gentlemen," whose names he would not disclose, "in procuring the adjustment of the Calvert county subscriptions, the endeavor to obtain the Anne Arundel subscription, and the state subscription" to the railroad which was under construction. The witness expressly refused to reveal the identity of the recipients of this money, on the ground that the disclosure would tend to criminate him. It is plain, therefore, that he paid it away for illegal purposes, and that he cannot now be allowed to charge the firm with the payment. The plaintiff positively denied any knowledge or sanction of these expenditures, but, even if he did know of them, that fact would not avail the defendant in seeking to obtain credit from the firm for so much money paid out, and as a result of such credit a money judgment against the plaintiff. In other words, if Mr. Clement, although with the authority of Mr. Rodgers, has expended money for criminal ends, the law will not permit him by means of this litigation to procure a judgment against Mr. Rodgers for that money, but will leave the parties, in respect to this portion of the case, precisely where they were when the litigation began. See Pepper v. Haight, 20 Barb. 429, 436, and cases there cited. Nor is this result affected by the claim of the defendant that the entire item of $2,095.05 has been made good to the firm in the shape of increased profits, for each partner has been credited with his one-half of the total profits on the Maryland contract, leaving their relative positions unchanged so far as the "contingent expenses" and the incriminating payments are concerned. These two items ($1,195.05 and $600) aggregate $1,795.05, in which amount the firm assets ought to be increased. If thus increased, the plaintiff in the account would be entitled to one-half thereof, or $897.52 more than he has received credit for. The defendant's judgment against him, though right in other respects, is excessive to this extent.

A new trial should therefore be ordered, unless the defendant consents to reduce his recovery by deducting $897.52 therefrom, in which event the judgment should be affirmed, without costs. All concur.

(15 App. Div. 553.)

DECKER v. UNION DIME SAV. INST. et al.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

1. TRUSTS—DEPOSIT IN SAVINGS BANK—INTENTION OF DEPOSITOR.
   The making of a deposit as "trustee" for a person named does not of itself divest the depositor of title, but his intention is a question of fact.

2. SAME—EVIDENCE.
   Plaintiff's brother deposited money in a savings bank in his own name, as "trustee" for plaintiff. The brother was then a widower of considerable means, with no one dependent on him, and he was on good terms with plaintiff. There was evidence that he had said that he had given the amount of the deposit to plaintiff. On the other hand, there was evidence that he had said that he made the deposit in plaintiff's name because it was his habit, when an account exceeded a certain sum, to withdraw it, and place it where it would draw more interest. *Held*, that a finding that the deposit was intended as a gift to plaintiff was sustained by the evidence, and therefore plaintiff was entitled to the money, though the depositor afterwards married again, and transferred the account in the name of his wife, stating that plaintiff should not have it because of her husband.

Appeal from special term, New York county.

Transferred from First department.