## W. H. BERRY ET AL. *v.* W. C. FOLKES AND H. E. HILLIARD,
## W. C. FOLKES *v.* W. H. BERRY ET AL.
### AND
## H. E. HILLIARD *v.* W. H. BERRY ET AL.

1. PARTNERSHIP. *For purchase of land. Debts. Descent. Partition. Case in judgment.*

   J. & W. purchased on credit a tract of land, which was to be cultivated as a plantation, for their joint benefit. The profits arising from the cultivation of the plantation were to be converted into realty as fast as realized, by paying for improving and equiping the place, the object of the partnership being the ownership of an improved and arable plantation. The arrangement between J. and W. contemplated that the partnership or co-ownership of the land should continue till they should accomplish their purpose of paying for, improving and equiping the plantation. J., having died several years after the purchase, his heirs instituted a suit for partition of the land and for an account and settlement of the partnership affairs of the firm of J. & W. *Held,* that the lands were partnership property in so far as to be bound for the debts of the firm of J. & W.; that the partners were capable of dealing with them as partnership property within the scope of the partnership business; that on a dissolution of the partnership they pass to the heirs of J., and not to his personal representative; and that neither W. nor the heirs of J. can insist upon a sale of the same for distribution of the proceeds, but that the heirs of J. are entitled to partition in kind, if it can be made after a settlement of the partnership accounts.

2. SAME. *Rights of partner to dissolve.*

   A partnership may be dissolved at the will of either party, unless there be a distinct covenant against the exercise of this right, or unless manifestly contrary to the clear understanding and agreement of the partners.

3. SAME. *Agreement to advance money. Right to claim interest.*

   An agreement by one of two partner's that he will advance the money necessary to the prosecution of the partnership business, does not, in the absence of any stipulation as to interest, authorize the conclusion that he did not intend to charge interest for the use of the money thus advanced.

4. SAME. *For acquisition of land. Power of alienation. Implication.*

   Where the object of a partnership is to purchase, improve and own a certain tract of land, and there is no express agreement that either partner shall have the power to alienate any part of the land acquired, no such power can be implied from the nature and scope of the partnership business.

5. SAME. *Implied powers of partner, arise how.*

   The implied power of a partner to do any act binding on the partnership does not arise from the necessity of a particular occasion, but must arise out of, and be within the contemplation of the contract of partnership.

6. SAME.    *Power of partner to convey land.    Payment of debt.*

The power of a partner to create a partnership debt and convey the land of the firm in payment thereof, cannot be inferred from the incidental power of a partner to convey the partnership land in payment of a debt of the firm previously contracted by one of the members in the exercise of a power clearly within the scope of the partnership.

7. SAME.    *Continuation under will of deceased partner.    Effect as to powers. Case in judgment.*

J. died leaving a last will and testament containing, together with others, the following clause: "It is also my will and desire that my partnership matters with W. in the plantation in Miss. be continued until the plantation can be properly improved and put in successful operation, say for two years, and after that to go as the law directs." This clause only authorized the continuation of the partnership in the same manner and for the same purposes as originally contemplated by the contract of partnership. It conferred no power on W. to do anything that he could not have done before by virtue of his powers as a partner; and it gave no authority to J.'s legal representatives to do any act, directly or indirectly, in continuance of the partnership, which might not have been done by either of the partners under the original contract of partnership.

8. SAME.    *Contract of surviving partner.    Rights of infant heirs.*

A contract to purchase from the surviving member of a partnership, lands of the firm in which infant heirs of the deceased partner are interested cannot be enforced against the infants, unless its enforcement would be clearly to their benefit.

9. SAME.    *Dissolution upon application of representative of decedent.*

A Court of Chancery will not refuse to decree the dissolution of a partnership upon the application of the legal representative of a deceased partner, unless a strong showing be made against it.

10. SAME.    *Dissolution, to date when.    Filing of bill or commencement of year..*

Upon a bill filed on December 13, 1881, seeking the dissolution of a partnership, whose business, being the cultivation of a plantation, is of an annual character, the court, in decreeing the dissolution, may properly refuse to fix the time therefor, as of the date of the filing of the bill, as asked by the complainants, but may fix it as of the beginning of the year 1882, though the defendant insist that it should not date earlier than the rendition of the decree against him after a long resistance on his part.

11. SAME.    *Dissolution.    Claim of profits and rent both.    Control of crop.    Injunction.*

Where the representatives of a deceased partner seeking dissolution and settlement of the partnership elect to share in the profits of the business up to the time of filing the bill, instead of in the rents of the partnership property, the court may allow them such share of the profits, and may also allow them to take rents in proportion to their interest for the time during which the surviving partner may continue in possession of the property, after the filing of the bill, opposing a decree of dissolution. But where the defendant in such

60 MISS. — 37

case is charged with the rents for a given period and gives bond for the payment thereof, he should not be enjoined from disposing of a crop made during that time, the crop in that event becoming his individual property.

12. SAME. *Settlement of accounts. Usurious payment, when against estate of deceased partner.*

   If the legal representative of a deceased partner pay a usurious debt contracted by the surviving member, who makes no objection to such payment, the latter is not entitled in a settlement of the partnership accounts to charge the estate of the deceased partner with the usurious interest thus paid except that where it appears that the estate has received a part of the benefit of the payment, it may to that extent be charged against the estate.

13. SAME. *Settlement of accounts. Claim of third person. Right of election.*

   Where in a suit for settlement of a partnership business it appears that a party to the suit, not being a partner, has the right to demand of the firm compensation in money for services rendered, or to pursue one of the partners upon a special contract to convey land for such services, it is improper for the court to compel such creditor to make his election before an account has been taken to ascertain the amount which the firm may owe him, if the same be indefinite and uncertain.

14. SAME. *Settlement of accounts. Indebtedness of a partner. Rate of interest*

   In the settlement of partnership accounts in a Court of Chancery, if one partner be indebted to the other for money advanced to the firm, the debtor should be charged interest at the legal rate of six per cent per annum on such debt, where there is no agreement as to the rate to be paid.

APPEAL and CROSS-APPEALS from the Chancery Court of Tunica County.

Hon. J. G. HALL, Chancellor.

On the second day of September, 1875, John C. Fizer and W. C. Folkes, both residents of Memphis, Tennessee, purchased a large tract of land lying in Tunica county, Mississippi. The purchase was made wholly upon credit, and the price to be paid $12,750, was divided into five equal annual instalments, payable respectively January 1, 1878, 1879, 1880, 1881 and 1882. The vendees received a deed for the land, and in return executed their five promissory notes for the purchase-money, and a trust-deed upon the land to secure the payment of the notes. Fizer was a merchant, and a man of large property; Folkes was a lawyer in full practice, and it was known to both that neither could go upon the land and personally superintend the operations to be there carried on. A

large proportion of the land thus purchased had been deadened before the war, but had not been cultivated, and had become densely covered with cane, bushes, and other growth usual upon such places in the Mississippi bottom, and at the time of purchase but little, if any, of the entire tract was cleared, or susceptible of cultivation. In pursuance of their agreement, land was leased at Mhoon's Landing to erect a storehouse upon, business was begun there, and efforts were made to have the land so purchased cleared and put into cultivation. On the fourteenth day of June, 1876, Fizer died at his home in Memphis, testate. The first clause of his will is as follows : "It is my will and desire that Mr. James W. Burton shall assist my beloved wife, in the management of all my business affairs, my wife to administer on my estate, and act under the advice and assistance of my attorneys, Wright & Folkes. As to the disposition of my estate, I wish that to follow the law of the State of Tennessee as to descents and distribution." Then follows a clause as to the testator's interest in the firm business of Estes, Fizer & Co., and next this clause : "It is also my will and desire that my partnership matters with W. C. Folkes in plantation and store in Mississippi be continued until the plantation can be properly improved and put in successful operation — say for two years — and after that to go as the law directs." The will was duly admitted to probate in Shelby County, Tennessee, and has since been probated in Tunica County. Mrs. Fizer declined to act as executrix, and thereupon letters of administration, *cum testamento annexo*, were granted to James W. Burton by the Probate Court of Shelby County, and he continued to act in that capacity until June, 1881, when he resigned, and James H. Malone soon afterwards qualified in Tennessee as administrator *de bonis non*, and is still acting. The complainant, Berry, who has intermarried with the widow of Fizer, has qualified as administrator of Fizer, *cum testamento annexo*, in this State, and in Shelby County, Tennessee, as the guardian of Fizer's minor children. The widow and the

three minors named as complainants in the bill are the only heirs or distributees of Fizer's estate. At the time of Fizer's death, comparatively little had been accomplished in the way of opening the Mississippi plantation, or making it in any way productive. A small quantity of land, variously estimated at from sixty-five to one hundred acres, had been cleared, some fencing had been done, a gin-house, and saw and grist mill had been erected, a few houses had been built, and eleven mules and some farming implements had been put upon the place. The debts of the firm of Fizer & Folkes at that time amounted to about $10,000 for the plantation and store, exclusive of purchase-money upon the land, and including that, the aggregate amount of their liabilities was nearly or quite $23,000. As assets they had the land, all the personal property thereon, the storehouse and lease at Mhoon's landing, the stock of merchandise on hand, and whatever may have been due the store at the time — the value of the personal assets not being shown by the proof.

On the twenty-seventh day of January, 1877, Folkes, acting as surviving partner, entered into a contract with Hilliard by which it was stipulated that the latter should reside upon the plantation and give his individual time and attention as manager thereon for the period of six years, for which Hilliard was to receive the sum of $500 per annum, and at the expiration of six years was to receive a deed to one-third of the land, cleared and uncleared, improved and unimproved, except that Fizer & Folkes were to have, on their two-thirds interest, without accounting to Hilliard for the value thereof or any part of the same, the gin-house, saw and grist mill attached thereto. It was also provided that if Hilliard should die, his estate was to have allotted to it a portion of the lands equal to the proportion of the time service was rendered by him. Fizer & Folkes were to be the judges of the expenditures to be made on the place. This contract was signed by Hilliard, and Folkes signed the firm name of "Fizer & Folkes," thereto. It appears from the proof that the contract was

presented to Burton, the administrator of Fizer, for his signature, and was also presented to Mrs. Fizer to be signed, but that both declined to sign it, on the ground that they were advised they had no power to bind the estate of Fizer, and might by signing it make themselves liable. Hilliard, however, went at once upon the land, and took upon himself the active management of the place. Obtaining through Folkes whatever was needed in money and supplies, he opened land, built fences, erected houses, and did whatever was thought necessary to improve the plantation and bring it into successful operation ; and at the present time, according to the proof, it has more than eight hundred acres of cleared land upon it, is well improved, well stocked, and capable of producing annually much more than the necessary expenses of carrying on and maintaining it. The funds and supplies furnished to the plantation and store by Folkes were charged to the firm of Fizer & Folkes by the merchants from whom they were bought or drawn. The mercantile firm of Estes, Fizer & Co., having, in accordance with a provision in Fizer's will, been continued until some time in 1878, the accounts of Fizer & Folkes were, by Folkes, as surviving partner, kept with Estes, Fizer & Co., until a dissolution of the last named firm. On the first day of June, 1878, the firm of Fizer & Folkes was indebted to Estes, Fizer & Co. in the sum of $17,282.14, and this sum was by Estes on that date charged up to the estate of his deceased partner, Fizer, and in that way settled. A year thereafter, the administrator and heirs of Fizer filed their bill in the Chancery Court of Shelby County, Tennessee, against Estes, to compel a settlement of the business of Estes, Fizer & Co. The bill was prepared by Folkes, as attorney for the complainants, and while charging Estes with having made various improper entries against Fizer's estate, made no objection to the charge of the debt due by Fizer & Folkes. A supplemental bill was afterwards prepared by other attorneys who came into the cause, but still no objection was made to the charge above referred to. A compromise decree was,

after answer filed and some proofs taken, entered in the cause,. by which it was adjudged that upon a full accounting by Estes and on final settlement of all the partnership matters, Estes was due the estate of Fizer the sum of $10,000, and for this sum Estes executed his notes, which were accepted in final settlement and used by Fizer's administrator in the payment of debts due by his testator. The mercantile business of Fizer & Folkes was wound up in 1879, some time thereafter the leasehold property of the firm at Mhoon's landing was disposed of by the defendant, Folkes, for $1,000, one-half of which was used in paying the salary of the manager of the store, and the balance retained by the surviving partner to reimburse him, as alleged in his answer, for money advanced by him to the firm.

On the 13th of December, 1881, W. Holder Berry, as administrator of Fizer's estate and as the next friend of his minor heirs and Mrs. Berry, formerly the widow of Fizer, filed the original bill in this cause against Folkes and Hilliard. It seeks an accounting by Folkes for all the partnership affairs, the appointment of a receiver until the business is settled, the cancellation of the agreement with Hilliard, a partition of the land, and a decree against Folkes, to be charged on his interest in the land, for the amount which may be found due by him to Fizer's estate. It is insisted by the complainants that under the will of Fizer it was the duty of Folkes to settle the partnership business within two years after Fizer's death, and that his failure to do so was a violation of his legal duty ; that he has refused to account to the heirs or representatives of Fizer ; that he has appropriated money and assets belonging to the firm to his own personal use ; that he is insolvent, has encumbered his interest in the partnership reality, is without credit to carry on the place, and that upon an accounting, Folkes will be due Fizer's estate a very large sum. The defendant, Folkes, in his answer denies any improper conduct or motives in the continuance and management of the firm business, or any diversion of the partnership

money or assets to his own use. He denies that he ever re-
fused to account to Fizer's heirs or representatives, but states
that he has always been ready to render them proper accounts,
and has only denied their right to control the business and to
compel him to make a final settlement of the partnership
business, until the objects of the partnership were accom-
plished. He insists that both under the original agreement
of partnership and under Fizer's will he has the right to carry
on the business of the firm until the plantation is in success-
ful operation and has paid all its debts. He admits the con-
tract with Hilliard, asserts his power to make such a contract,
and alleges that it was the best thing that could have been done
under the circumstances, and the only thing which could have
saved the firm from ruin. He admits the recovery of judgments
against him in the city of Memphis, and the encumbrance of
his interest in the realty of the firm, but says the money thus
due is as surety only, and that he has always paid his own
debts, and has credit strong enough to enable him to obtain,
without security, all the money and supplies needed for the
plantation. He admits that he would, upon an accounting, be
indebted to Fizer's estate in a considerable sum, but claims
the right, under the partnership articles and Fizer's will, to
carry on the plantation until the accounts can be equalized
from the profits of the place. The defendant Hilliard, in his
answer, insists upon the validity of his contract with the surviv-
ing partner, gives a detailed history of the change wrought in
the plantation under the control of Folkes and his own active
management, and asserts his right to take one-third of the
land freed from the debts of the partnership and from any
sum which may be due Fizer's estate upon an accounting by
Folkes.

On the 3d of October, 1882, the complainants filed an
amended and supplemental bill, in which they alleged that
Folkes and Hilliard had been controlling the plantation during
the past year, and that an account in the name of Fizer &
Folkes had been made with the house of Estes, Doan & Co.,

amounting, on the 13th of September, 1882, to the sum of $12,358.33, $10,000 of which was closed by note of Fizer & Folkes, executed by defendant Folkes, and all of which was claimed by Estes, Doan & Co. to be a liability against the partnership property, including the interest of complainants therein; that this indebtedness contained large sums of usurious interest, and that neither the complainants nor their interest in the partnership property were liable for any part of the debt. The insolvency of both Hilliard and Folkes was charged, and an injunction was prayed for, and granted by Chancellor Morgan, restraining the defendants from selling or removing any part of the crops raised on the plantation, except sixty bales of cotton which was allowed to be shipped to Estes, Doan & Co., to be applied as the court might thereafter direct. The defendants filed lenghty answers reiterating most of the allegations contained in their answers to the original bill, and alleging that of the indebtedness held by Estes, Doan & Co. about $2,550 was for purchase-money paid on the land, $2,000 was for mules and tools bought for the plantation, and the balance was for the usual running expenses of the plantation. They deny their insolvency, and claim that the account due Estes, Doan & Co. is a liability against the entire partnership property. The question of usurious interest in the account of Estes, Doan & Co., and in the account of $17,282 paid by the estate of Fizer to Estes, Fizer & Co., is, in these amended pleadings, fully raised by the complainants and defendant Folkes respectively.

On the 30th of December, 1882, the court rendered a final decree; from which all the parties appealed. The nature and effect of the evidence, the provisions of the decree appealed from, and the points assigned for error by the respective appellants are sufficiently stated in the opinion of the court.

*Malone & Watson*, for Berry and wife and the heirs of Fizer, appellants and appellees.

1. The purchase of the place did not create Fizer and

Folkes partners, for conceding that they purchased this place to carry on planting as partners, still they were not partners as to the land, but were simply tenants in common as to that. *Alexander* v. *Kimbro*, 49 Miss. 529, 536 ; *McGrath* v. *Sinclair*, 55 Miss. 92 ; *Wheatley* v. *Calhoun*, 12 Leigh, 265–273 ; *Pierre* v. *The Armelian*, 21 La. An. 668 ; *Ware* v. *Owen*, 42 Ala. 212.

2. But conceding for the sake of argument that Fizer and Folkes were partners in the ownership of said plantation, then still we think that no authority can be found to support the claim of the surviving partner in regard to the contract with Hilliard. The power of partners in a non-commercial partnership is much more limited than those of a commercial partnership. It is now well settled that where two are interested in carrying on a farm as partners, there is no implied authority in either to draw a bill of exchange or note or to give a mortgage. *Davis* v. *Richardson*, 45 Miss. 506 ; 9 Smed. & M. 290–300 ; 48 Miss. 310 ; 50 Miss. 358 ; 52 Miss. 713. It has become almost an axiom in law that one partner cannot bind his copartner by deed without authority for that purpose. *Doe* v. *Tupper*, 4 Smed. & M. 268. Where a partnership owns real estate, one partner cannot bind the other partner by conveying the land in the partnership name. Though executed in the partnership name, the interest only of the partner signing the deed will pass thereunder. *Watson* v. *Tusten*, 49 Miss. 575.

3. Again, it should distinctly be borne in mind that if there was a partnership formed between John C. Fizer and W. C. Folkes, it was simply a partnership for acquisition only, and not for disposition. No one pretends that either Fizer or Folkes contemplated a sale of the land. All that is claimed is, that it was a partnership to buy and improve the plantation. There is a manifest difference between a partnership for acquisition and one for both acquisition and disposition. *Dilworth* v. *Mayfield*, 3 Miss. (7 Geo.) 40–51 ; *Brady* v. *Calhoun*, 1 Penn. (1 R. P. & W.) 147. In such cases the parties do not stand in the relation of partners to each other. *Ibid.*

4. But it may be said that the will gives the surviving partner power and authority to carry on the business. Is this true? If the business was to be carried on until the place could be put in successful operation, who was to carry it on, and in whom was vested the discretion of determining when it was in successful operation, and that it was to the interest of Fizer's estate to put an end to the arrangement? The will appoints Mrs. Fizer as executrix and directs her to carry on all the business affairs of the estate. It then directs the plantation business to be carried on. This means that on the part of Fizer's estate Mrs. Fizer was to carry on the business. *Brasfield* v. *French*, 59 Miss. 638. There is, strictly speaking, no such thing as a continuation of a partnership after the death of one partner. Pars. on Part. 438. So that the will created a new partnership, with Folkes on the one side and Fizer's representative and heirs on the other. As shown above, this business was to be conducted on the part of Fizer's estate by his representative, and his representative has the discretionary power of saying whether it is to the interest of Fizer's estate to continue the business. *Brasfield* v. *French*, 59 Miss. 638, 639.

5. But suppose we are wrong in this, and that the will created a partnership to be continued by Folkes for this long period as he claims, still we say that Fizer's representative had a right at any time to put an end to this partnership, for the reason that no partnership is indissoluble. A man can do no act to divest himself of the capacity to revoke a partnership. *Skinner* v. *Dayton*, 19 Johns. 513; *s. c.*, 10 Am. Dec. 286; *Marquand* v. *N. Y. M. Co.*, 17 Johns. 525.

6. The proof shows clearly that it is not to the interest of Fizer's heirs that Folkes' contract with Hilliard should be enforced against the partnership.

7. The complainants are not liable to Hilliard. Folkes, in carrying on the business after the death of Fizer was, of course, acting in the capacity of a trustee. *Skidmore* v. *Collier*, 15 N. Y. Supreme Ct. 50; *Whitney* v. *Colton*, 53

Miss. 691; *Washburne* v. *Goodman*, 17 Pick. 537. It is a well settled principle of law, that persons dealing with a trustee must look alone to the trustee for their compensation. They cannot look to the trust estate. *Clopton* v. *Gholson*, 53 Miss. 471; *Fearn* v. *Mayers*, 53 Miss. 465; *Norton* v. *Phelps*, 54 Miss. 471.

8. We say the filing of the bill is the true date on which Folkes should be compelled to account to us for the value of the personalty, and from that date he ought to pay rent, and after that date he alone is responsible for Hilliard's services. His conducting the business was merely permissive on the part of Fizer's representative. It was the right of Berry to call on Folkes for a settlement at any time, and it was the duty of Folkes to make the settlement upon demand. *Mayson* v. *Beaseley*, 5 Cush. 112.

9. We say that the court ought to have retained the injunction in full force, and compelled him to give bond to account for the entire proceeds of the crop and let the court apply the proceeds on the debts due from Folkes to the debts due from him as surviving partner on the date of the filing the bill, for the following reasons: First. He is a non-resident and insolvent. Second. He is largely indebted to the trust-estate far in excess of the proceeds of the crop. Third. The rent for 1882, which he is required to give bond for, is entirely inadequate to meet the demands due from him as surviving partner on the date of the filing of complainants' bill.

10. Folkes' ought to be charged with interest, ten per cent, with annual rests. He either directed, knew of, or, to say the least of it, did not object to the charging off of the $17,-282.14 account to Fizer's estate. Fizer, in his will, did not bind his general estate for the debts thereafter to be incurred by Folkes in conducting the business of the partnership and without express directions to the effect the general assets were not bound. *Brasfield* v. *French*, 59 Miss. 631.

11. That courts of equity will grant maintenance to minors during litigation and allow them counsel fees, there can be no

sort of doubt at this late day.    We are also entitled to an immediate partition of the land.

12. Folkes is estopped to claim that there was any usury in the settlement of the account with Estes, Fizer & Co.    That a party can be estopped from pleading usury is well settled. *Coleman* v. *Shaw*, 24 Iowa, 441 ; Tyler on Usury, 418.    See, also, *Adams* v. *Powers*, 48 Miss. 466.

*J. H. Malone*, of Malone & Watson, argued the case orally. *T. W. White*, on the same side.

1. The deed to John C. Fizer and W. C. Folkes, of the land in controversy, made them tenants in common.    See *Whitney* v. *Colton*, 53 Miss. 691 ; *Scruggs* v. *Blair*, 44 Miss. 412 ; *Alexander* v. *Kimbro*, 49 Miss. 537 ; *Wheatley's Heirs* v. *Calhoun*, 12 Leigh, 272 ; *Ware* v. *Owen*, 42 Ala. 212 ; *McGrath* v. *Sinclair*, 55 Miss. 89.

2. The partnership of Fizer & Folkes was limited to the carrying on of the store at Mhoon's Landing, the clearing and improvement of the lands of which they were tenants in common, the raising and marketing the crops on the same ; but had no reference to any use of the land other than its improvement and cultivation.    The land was to be divided in kind between them, there being no intention of selling it, or any power to do so, or to encumber it.    It was in no sense a general partnership.    *Davis* v. *Richardson*, 45 Miss. 499 ; *Morgan* v. *Pierce*, 59 Miss. 210 ; *Pickels* v. *McPherson*, 49 Miss. 216 ; *Cooper* v. *Mason*, 48 Miss. 300 ; *Prince* v. *Crawford*, 30 Miss. 344 ; *Walton* v. *Justin*, 49 Miss. 569 ; *Pierce* v. *Jarnigan*, 57 Miss. 111.

3. The will of General Fizer did authorize the partnership to be carried on after his death, but only for two years, and only by his wife, as executrix ; but she having declined to qualify and his administrator, Burton, refusing to join in carrying on the business, the power given in the will failed, and it became the duty of the surviving partner at once to close up the business.    *Brasfield* v. *French*, 59 Miss. 638 ; *Bank of Port Gibson* v. *Baugh*, 9 Smed. & M. 303 ; *Kirkman* v. *Booth*, 11 Beav. 273.

3. In all that was done by W. C. Folkes, after the death of General Fizer, he was a trustee and liable, as such, to account, and all other duties incident to that character. *Skidmore* v. *Collier*, 15 N. Y. Supreme Ct. 50 ; *Whitney* v. *Colton*, 53 Miss. 691 ; *Citizens' Mutual* v. *Ligon*, 53 Miss. 313. Being a trustee, therefore, for the minor children of General Fizer, part of complainants in this cause, he must be held to all the strictness of such a relation. *In re Clap*, 2 Low. 168.

5. In *Pierce* v. *Jarnigan*, 57 Miss. 110, 111, the court say " the question whether any given act is within the scope of the business of any particular partnership is determined by the nature of the business and by the practice of persons engaged in it. * * * It is said by an approved text writer, that what is necessary to carry on a partnership business in the ordinary way is made the test of the powers of the partnership, where no actual authority or ratification can be proved. This necessity is not that which arises from the particular exigencies of the firm, growing out of extraordinary circumstances of good or ill fortune attending its business, but such as arises from the carrying on, in the ordinary way, the particular business in which the partnership is engaged.

6. Complainants claim that W. C. Folkes shall not be allowed to attack any usurious charges in the account of Estes, Fizer & Co., paid off by their means, since it was made by himself ; that having got the benefit of an illegal use of their means, he shall account for it at ten per cent interest with annual rests, as the proof shows the estate was getting ten per cent, and the Folkes & Fizer concern was paying not only ten per cent but commissions.

7. Complainants claim that they shall have partition of the land as of the date of the filing of the bill in this cause, and that in settling the questions of improvements on the place and any indebtedness, claimed to be due third parties, they shall first have the benefit of their money taken to pay the accounts to Estes, Fizer & Co., insisting that Folkes, as trustee or survivor, could not incur any debt to bind the trust estate, as

long as he was indebted to it. *Clopton* v. *Gohlson*, 53 Miss. 466; Hill on Tr., 567; *Norton* v. *Phelps*, 54 Miss. 467; 2 Perry on Tr. (2d ed.) 907; *Fearne* v. *Mayes*, 53 Miss. 458; *Woods* v. *Ridley*, 27 Miss. 151; *Payne* v. *Stone*, 7 Smed. & M. 373; *McNuller* v. *Acton*, 4 Man. & G. 756.

8. Complainants claim that on a settlement with W. C. Folkes on the principles above announced there will be a large debt due them from him for which they are entitled to a lien on his interests in the land in controversy. *Whitney* v. *Colton*, 53 Miss. 691; *Scruggs* v. *Blair*, 44 Miss. 412; *Corrant* v. *Tracy*, 49 Ind. 350; *Withers* v. *Pemberton*, 3 Coldw. 62; Pars. on Part., sect. 387; *Pearl* v. *Pearl*, Ch. 206; *Gee* v. *Gee*, 2 Sneed, 395; *Williams* v. *Love*, 2 Head, 8; *Sweat* v. *Henson*, 5 Humph. 49.

9. Complainants insist that an allowance should be made for their support pending this litigation, and also for fees to their counsel who are carrying it on. This allowance should be made out of the rents of the plantation and stock due them for 1882.

10. Complainants deny any right of W. C. Folkes to compensation. *Randle* v. *Richardson*, 53 Miss. 176.

11. These complainants have no relation with H. E. Hilliard in connection with his contract with Folkes. If under it, or any contract with W. C. Folkes, he has rendered valuable services to the common property, it is W. C. Folkes' duty to pay him, and they will allow the same to Folkes on their settlement with him. If W. C. Folkes does not pay him such dues by reason of insolvency, then he can come on their estate under the conditions laid down by the court in *Phelps* v. *Norton*, 54 Miss. 471; *Clopton* v. *Gholson*, 53 Miss. 471; *Fearn* v. *Mayers*, 53 Miss. 465.

*T. W. White*, made an oral argument also.

*W. C. Folkes*, appellant and appellee, *pro se.*

A court of equity may authorize the continuance of a partnership after the death of a partner on behalf of infants. *Powell* v. *North*, 3 Ind. 392; *Thompson* v. *Brown*, 4 Johns.

Ch. 619. Or it may be continued by acquiescence of personal representatives, in which event surviving partner is entitled to compensation. *Schenkle* v. *Dana,* 118 Mass. 236. If a surviving partner carry on business for benefit of estate of the deceased partner, he is entitled to an allowance for so doing. *Griggs* v. *Clark,* 23 Cal. 427 ; *Schenkle* v. *Dana,* 118 Mass. 236, cites Story on Part., sect. 343 ; Coll. on Part., sect. 328. As the surviving partner is charged with payment of debts, he has a right in equity to dispose of the firm's real estate for that purpose, and, although his deed may not convey the legal estate, yet it does convey the equity which a court of equity will enforce. *Andrews* v. *Brown,* 21 Ala. 437 ; *Murphy* v. *Abrams,* 50 Ala. 293 ; *Shanks* v. *Kline,* 114 U. S. 18 (14 Otto). A surviving partner has the right to control real estate until debts of firm are paid and affairs of firm finally settled, and until that time the widow of deceased partner has no separate share in the property. *Cobble* v. *Tomlinson,* 50 Ind. 550. See also Pars. on Part. 372, 441, and note p. Until the debts are all paid, neither the personal representative nor the heirs of the deceased partner have any beneficial interest in the partnership's real estate. Hilliard should be treated as an innocent purchaser. *Field* v. *Schuffelin,* 7 Johns. Ch. 150. "A partnership, while generally dissolved by the death of the partner, may be continued longer by express agreement between the parties, or under the provisions of the will of the deceased partner." *Davis* v. *Christian,* 15 Gratt. 32. "The implied trust or pledge which each member of the partnership has, that its property shall be applied to the payment of its debts, extends as well to real estate which has been purchased for partnership uses as to personalty, notwithstanding the real estate may have been conveyed by such a deed as, under our statutes, would at law make the partners tenants in common." *Crooker* v. *Crooker,* 46 Me. 250 ; 9 Am. Law Reg. 539 ; *Deviney* v. *Mahoney,* 8 C. E. Green, cited in 12 Am. Law Reg. (N. S.) 63 ; *Offutt* v. *Scott,* 12 Am. Law Reg. (N. S.) 575. " To charge a partner with interest on an amount due

his firm, an agreement must be proved." *Brown's Estate,*
11 Phila. 127.   This case is cited in 12 U. S. Dig. (N. S.),
1881, p. 659.   On proper grounds a court of chancery will
inhibit the dissolution of a partnership.   Gow on Part. 279.
And will compel a specific performance of the agreement.
Swanst. 512, note, 513.   Now, the articles of partnership as
proven by Estes and by Burton should be carried out, so that
Folkes can, by his labor, carry out the contract and pay for
his interest out of the earnings, and let Fizer's estate be re-
imbursed out of the earnings.   Folkes would never have
entered into a large enterprise like this, where he could have
been called on at any time that it might suit Fizer to settle up,
for the large amount of money that it was contemplated Fizer
should furnish, and upon Folkes' inability to respond, have
his interest sacrificed by a sale.   A testamentary power to
carry on business, etc., supersedes the statutory power, and
gives an executor (and a surviving partner) greater power
over the real estate than the statute gives over the personal
estate.   Such a power, many of the authorities hold, cuts off
the descent to the heir, and vests an interest in trust in the
executor (or partner, I add).   *Miller* v. *Mestch,* 8 Barr, 417 ;
64 Pa. St. 330 ; 12 Pa. St. 72.   And under cases which hold
that it does not cut off descent to the heir, it yet creates an
express trust in favor of creditors, which a court of equity will
enforce.   Hill on Tr. 506 ; 2 Jar. on Wills, 587, 588 ; 2
Story's Eq., sects. 1246, 1247 ; *Davene* v. *Fanning,* 2 Johns.
Ch. 254 ; *Osgood* v. *Franklin,* 2 Johns. Ch. 21.   Under the
rules applicable to trustees in general, and especially under
the rules applicable to a surviving partner as expressly decided
in the *Beasley Case,* 5 Cush. 106, where the heirs of deceased
partner claim the profits of the business, they must share in
the losses, and in the expenses, not in what they might or
ought reasonably to have been, but in what they actually were.
Whatever these expenses were, they have produced the results
or profits, which they seek to share, and if they take them
they must take them *cum onere.*

*A. Wright*, on the same side.

How must Folkes, as surviving partner, account? How must he account by the pleadings, and how must he account by the principles settled in courts of equity? . Complainants did not, when Fizer died, — nor do they, nor will they now, — ask to withdraw with the value of their share of the partnership property as it was at Fizer's death, and interest; for instead of a loss through the management of Folkes and Hilliard, there will be a certain profit to the partners, after paying all debts and expenses, including the contract with Hilliard. *Hoyt* v. *Sprague*, 13 Otto, 629. As they claim the profits, they must allow Folkes credit for all the expenses incurred in conducting the business — including Hilliard's contract — that being necessary for the preservation of the estate, and a thing that enhanced the value of the common property, and if not executed may leave a possible burden on Folkes beyond his share; in other words, by claiming the profits they assent to Folkes' contracts and manner of transacting the business, and submit to terms of perfect equality between Folkes and Fizer's estate. In brief, they ask Folkes to divide with them the profits he made. Their claim is derivative through him. And he can get nothing until Hilliard is satisfied. The contract with Hilliard is a part of the expenses; and if Folkes is driven to satisfy Hilliard free of cost to the complainants, it may turn out he will get nothing, when the entire profits are due to his time, labor, skill and money. We repeat, we must find the clear, net profits to Folkes, and let complainants in for half. They cannot stand above or on better ground than Folkes. *Mayson* v. *Beazley*, 27 Miss. 106–114; Perry on Tr., sect. 245; *Willie* v. *Ellice*, 6 Hare, 515; *Pheul* v. *Gillon*, 5 Hare, 5; 1 Gall. 638; *Crawshay* v. *Collins*, 2 Russ. 325–349; *Lake* v. *Craddock et al.*, 3 P. Wms. 159; 1 Story, 478; 4 Humph. 362. Therefore it was error in the chancellor not to allow Hilliard's contract for one-third of the land to stand, and it was clearly error to charge Folkes for the rents of the land in 1882 instead of an inquiry as to

the profits ; first, because neither the bill nor the amended bill makes any case for rents. The claim is for profits. The application for a receiver on the 31st of December, 1881, was not to stop and wind up and withdraw the share of Fizer's estate from the assets of the concern, but to carry on the partnership as it had been before, only changing managers. In the next place, and what is conclusive, the complainants having elected to take their share of the profits, they must take them during the whole period, subject to all the losses of the business. They cannot take profits for one period and rents for another. *Simpson* v. *Chapman*, 4 De G. M. & G. 154–173 ; Perry on Tr., sect. 470 ; *Heathcote* v. *Hulme*, 1 J. & W. 122. It was also error not to allow Folkes compensation for managing the business. A stronger case for the allowance cannot be supposed. Perry on Tr., sect. 906 ; 25 Beav. 382, 389 ; 1 Jac. 284, 299 ; 2 Russ. 325, 348 ; 2 Lindley, side p. 869 ; 23 Cal. 428 ; 118 Mass. 236. What then was meant by the direction to continue the partnership until the plantation should be properly improved and put in successful operation, and after that to go as the law directs? He must have meant at least until the debt of $23,000, which included the purchase-money, was paid : otherwise the estate would be swept away and his devisees, his wife and children, get nothing ; for he plainly meant that under the law of descents and distributions they should have a clear estate from the property. But how could this be effected except from the profits of the plantation and store, and how could profits be made unless the plantation was opened and duly cultivated? And this of necessity involved the payment of the current expenses of carrying on the business, and of necessity included a manager like Hilliard, and of necessity included the Hilliard contract. The two years within which Fizer erroneously supposed his part of this estate might be turned over to his wife and children, imposed no limitation upon the power of Folkes, and were not so meant at all by the testator. The leading and general pur-

pose of the testator was that the partnership should continue until the plantation was properly improved and put in successful operation and so left that his part of the estate could lawfully be turned over, free of encumbrance, to his wife and children.  The terms in the will, " after that to go as the law directs," plainly mean this, and can mean nothing else ; for to turn the estate over before this was accomplished would not only have been a vain and useless thing, but a thing legally impossible, because the claim of the creditors was paramount to any title to Folkes or to Fizer's devisees, and until these creditors were paid there was nothing to inherit, and could be nothing.  The deed of trust to the vendors and the debt for the purchase-money, with the other firm debts, must all be paid and the partners equalized.  Folkes had a right to demand this.  Fizer knew all these things when he made his will, and meant they should be accomplished before the estate should be turned over to his family.  This was the substance of what he wanted, no matter how long it took.  In devising this estate to his family he did not make a vain and illusory thing.  He knew that neither he nor Folkes were to advance anything out of their private means.  He knew they had agreed that neither should do so except that he was to furnish the money and supplies, to be reimbursed from the crops and store.  He knew that neither had the means to advance anything.  This construction of the powers of this will is in harmony with the partnership articles or contract between Fizer and Folkes.  The partnership was not to terminate until the very thing the will contemplates was accomplished, namely, a clear estate in the land to each partner.  Therefore the powers of Folkes under this will have never yet been fully executed.  *Doe* v. *Applin*, 4 Term Rep., side pp. 82, 89 ; *Jackson* v. *Veeder*, 11 Johns. 170 ; 7 Johns. 33, 34, 35 ; *Wilson* v. *Troup*, 2 Cow. 195, 199, 200, 201, 202, 203, 227, 228, 229, 232, 233, 234, 235 ; 50 Miss. 15.

Folkes merely as surviving partner, unaided and intrammelled by the will, had the undoubted right to sell all this

property, real and personal, to pay the debts of the firm and equalize the partners. *Shanks* v. *Kleine*, 14 Otto, 18. And certainly, if the case in 14 Otto, 18, is not to be followed as the law of Mississippi, yet by the settled law of that State Folkes, by a decree in chancery, could have effected the same thing. The vendors of the land could have enforced the trust or mortgage for the purchase-money and had a sale. So could Folkes. It would plainly have taken all of the property to pay the debts, and would then have left a clear loss of over $10,000. Folkes, to serve and save himself and Fizer's estate, took a different course. He carried out the contract with Hilliard and opened the plantation, and the property will now not only pay all the debts and relieve the partners from loss, but will leave a clear profit to the two partners. In doing this, instead of the whole land, he only sold a one-third of it, and saves a large personalty. And yet the complainants, as actors, come into equity and ask to cancel the contract with Hilliard and leave him and Folkes to fight it out as to what Folkes shall pay on the breach of contract. 1 Gall. 638 ; 3 P. Wms 159. Suppose chancery before hand had been approached to sanction the Hilliard arrangement, would it not have done so? And could it not have done so? Code, sects. 2108, 2112, 2113, 2116 ; *Hodges* v. *Riker*, 5 Johns. Ch. 163 ; *Thompson* v. *Brown*, 4 Johns. Ch. 619 ; 2 Story's Eq., sect. 1357 ; 3 Head, 518. As it is now done, and with such good results, will not the court approve it and sustain it? Perry on Tr., sect. 915 ; 2 Story's Eq., sect. 1357 ; 3 Head, 518. And if the court does not directly and actively approve it, will not the court repel the complainants from a disturbance of the Hilliard contract, as they come into equity for active relief upon grounds so unconscientious? 1 Gall. 638 ; 3 P. Wms. 159.

Again, aside from the powers of Folkes as the surviving partner and aside from the powers granted him in the will, and aside from the duties each partner owed to the other, under the partnership contract or articles, the Hilliard contract

being highly beneficial to Fizer's children, indeed indispensable to save the estate from loss and ruin, and absolutely necessary to rid the estate of Fizer of a heavy debt, a court will now execute the contract. Not only a court of chancery to save an estate to infants, may act for them and make contracts beneficial to them, but their guardians, their mothers, their step-fathers and even strangers may do so. This has been often done, and it is very necessary to the welfare and interest of minors that this shall be the law. It is impossible, as a rule, to hurt the minors by it, for the guardian, the mother, the step-father or the stranger who undertakes to act for them does so at their peril. The action must not only be in good faith, but must be founded in wisdom and prudence. And the court of chancery will see to it that before the contract is executed it must appear to have been one beneficial to the infants. *Roberts* v. *Wilson*, 2 Bibb, 597, 602; *Overback et al.* v. *Heermance et al.*, Hopk. Ch. 337, 341; *Smith's Heirs* v. *Christmas*, 7 Yerg. 565; 3 Head, 518; 2 Story's Eq., sect. 1357.

*A. Wright*, also made an oral argument.

*Calvin Perkins*, for Hilliard, appellant and appellee.

1. I shall confine myself to the seventh, eighth, ninth, and tenth errors assigned for Hilliard. As to the seventh error: Folkes should be credited with one-half of the value of one-third of the plantation, because he has in good faith and with the best intentions irrevocably bound himself to convey to Hilliard one-third of the place. If he did not bind Fizer's heirs as to their moiety of the land attempted to be conveyed to Hilliard, then he bound himself and his interest in the land for the entire contract. It is like the case of a surviving partner executing a promissory note — his individual obligation, although he execute it in the firm name. The complainants are claiming the profits of the business as continued by Folkes, and when they repudiate the Hilliard contract and take their half of the land with all the improvements on it, they are getting their share of the profits, for all the revenues of the

plantation went into its improvement and the payment of the purchase-money. As between the representatives of a de-ceased partner and the survivor, who has continued the business, if the former claim a share in the profits, then they must only receive what is left of the profits after deducting the actual expenses, not what the expenses ought to have been with prudent management, but what they actually were, in the absence of fraud, — nothing shall be profit to them, that was not such in the hands of the survivor. *Mayson* v. *Beazley*, 5 C. 106, especially pp. 111, 112, 113.

2. As to the eighth error : Complainants should not be allowed to assert any lien to the detriment of Hilliard. Now the per-sonal representatives of Fizer, having not only stood by and seen Folkes continue the partnership business, but having actually embarked in it, both by putting in means, and by interference in its management, will they be permitted to assert a lien against Folkes' interest which will practically leave Hilliard not one acre of land for his six years of com-petent and faithful services? Whether you say that Hilliard is a creditor of the partnership or not, he is certainly a creditor of the new business, he performed services for the " new business," under a contract, and that business derived great benefits from such services. The case of *Hoyt* v. *Sprague*, 13 Otto, 625, 629, lays down two principles : 1. If the executors of the deceased partner permit the survivor to carry on the business, their lien does not extend to the prop-erty acquired in carrying on the new business, so far as the creditors of the continued business are concerned. 2. If they actually put money into the business they will not be per-mitted to assert their lien. upon any of the property to the detriment of the creditors of such business, they do not even stand *pari passu* with the creditors, but must wait until all such creditors are satisfied. 13 Otto, 628, 629. See, also, 2 Lindl. on Part., side p. 681. See, also, 25 Beav. 280 ; L. R. 8 Ch. Div. 1033.

3. As to the ninth error : Hilliard can have no fair opportun-

ity to make an election until the court has first fixed the amount of the moneyed compensation offered him, and also whether there will be any encumbrance, and if any, how much, against the land on account of the partnership transactions in the event he should elect to proceed against Folkes' moiety for that, — he must not be called on to take so important a step in the dark.

4. As to the tenth error : Hilliard's position is, on principle, identically the same as if he held Folkes' bond for title bearing date the twenty-fourth day of January, 1877, conditioned to convey to him an undivided one-third interest in the Fizer and Folkes plantation at the end of six years from that date, upon his performing certain services.   He has performed the services, and has been in possession all along from that date to this.   Now, the authorities are well settled that if a partner convey to a third party any portion of his moiety of the partnership realty, that the purchaser takes it subject to the state of the partnership accounts at the time, and with the liability to have it subjected to the payment of the indebtedness then existing, due either to the other members of the firm, or to the creditors thereof ; but, that the rule has been so announced, shows that the purchaser takes it freed from all after transactions ; it is no longer partnership property, and of course is not subject to the partnership lien.

*Calvin Perkins*, also made an oral argument.

*Craft & Cooper*, on the same side.

In this case the land was the capital stock and the only capital stock in the partnership.   We insist, that both in this country and in England, that all the cases hold that when land is purchased with partnership funds or credit for partnership purposes, and a deed is made to the partners, as in this case, without expressing upon its face that the conveyance is made to partners, the land so purchased and conveyed becomes partnership property or assets, and as such is converted into personal property and will so continue until all the purposes of the partnership are accomplished.   The only

difference between the rule in England and in America is, that the real estate here becomes real estate again when the partnership ceases, while in England it is converted into personalty for all purposes. *Darley* v. *Darley*, 3 Drew. ——— ; *Ludlow* v. *Cooper*, 4 Ohio, ——— ; 8 Ohio, 364 ; *VanBrunt* v. *Applegate*, 44 N. Y.——— ; *Fairchild* v. *Fairchild*, 64 N. Y. 471 ; *Sykes* v. *Sykes*, 49 Miss. 190 ; *Whitney* v. *Colton*, 53 Miss. 691 ; *Scruggs* v. *Blair*, 44 Miss. 406 ; *Tillinghast* v. *Champlin*, 4 R. I. 209, 213 ; 2 Lindl. on Part. 652, note 1. Mr. Collyer in his excellent work on partnership (6 ed.), vol. I., p. 228, note, uses this language : "Real estate that is strictly partnership property, being treated as personalty, may be sold by the surviving partner for partnership purposes, and while such conveyance does not convey the legal title, yet it carries the equitable title to the purchaser, and a court of equity will compel the heirs to convey the legal title," and cites the following authorities : *Andrews* v. *Brown*, 21 Ala. 437 ; *Ludlow* v. *Cooper*, 4 Ohio, 153 ; *Dupuy* v. *Leavenworth*, 17 Cal. 267 ; *Murphy* v. *Abrams*, 50 Ala. 293 ; *Plat* v. *Oliver*, 3 McLean, 27 ; *Holland* v. *Feller*, 13 Md. 195 ; *Smith* v. *Walker*, 38 Cal. 385 ; *Cobb* v. *Tomlinson*, 50 Ind. 550 ; *Little* v. *Snediker*, 52 Ala. 169. "It would seem to follow as a logical result that equity, at least, will consider it as subject to all the incidents of partnership, including the *jus desponendi* in each partner, and in the survivor when one of them dies." The survivor can pass a good equitable title and the holder of the legal title will be forced in equity to convey it to the survivor's vendee. *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 365 ; *Andrews* v. *Brown*, 21 Ala. 437 ; *Murphy* v. *Abrams*, 50 Ala. 393 ; *Dupuy* v. *Leavenworth*, 17 Cal. 263 ; *Baldwin* v. *Richardson*, 33 Texas, 16 ; *Solomon* v. *Fitzgerald*, 7 Heisk. 552 ; *Merton* v. *Palmer*, 13 Mich. 367 ; *Burnside* v. *Merrick*, 4 Metc. 537 ; *Howard* v. *Priest*, 4 Metc. 582 ; *Smith* v. *Jackson*, 2 Edw. Ch. 28 ; *Ludlow* v. *Cooper*, 4 Ohio St. 1 ; *Dyer* v. *Clark*, 5 Metc. 562 ; *Tillinghast* v. *Champlin*, 4 R. I. 173 ; *Mathews* v. *Hunter*, 67

Mo. 293; *Morrill* v. *Dickey*, 38 Mich. 41; *Little* v. *Snediker*, 52 Ala. 169; Pars. on Part. 363, 364, 365; *Pugh* v. *Currie*, 5 Ala. 446; *Owens* v. *Collins*, 28 Ala. 837.   See, especially, *Shanks* v. *Klein*, 13 Otto, 18.   We are to construe Fizer's will in connection with the contract of partnership as formed by Burton and Estes.   The plantation was to be cleared up, opened and run until all the debts of the firm, including the purchase-money, were paid in full, as Estes expresses it, "until it was free of debt entirely."   This necessarily meant that it was to be continued until the plantation was properly improved and put in successful operation.   This was in the mind of the testator when the will was written and makes clear his meaning.   The general intent of the testator was that the partnership should continue until all the objects of the partnership were accomplished and this must control.   The particular intent expressed by the words "say two years" cannot control, but must yield to the clearly expressed general intent.   The testator clearly intended that Folkes should continue the business until the contract of partnership was fully completed.   We submit further that Folkes, having contracted a heavy liability under this contract, was clearly entitled to his contract, and that General Fizer could no more have violated and set aside this contract by his will than he could have done whilst living.   The obligation of contracts under our Constitution and laws is inviolable and cannot be impaired by will or otherwise.   A citation of authorities upon this point is unnecessary.   *Sykes* v. *Sykes*, 49 Miss. 190.   We submit that the court will not allow the complainants to reap all of the fruits of this contract without having their share of its burdens.   They will not be allowed to throw the burden of this contract upon Folkes upon their "*quantum meruit* idea" and thus impose a serious loss upon Folkes by which they will be greatly benefited.   *Mayson* v. *Beasley*, 5 Cushm. 106.

*L. P. Cooper*, of Craft & Cooper, argued the case orally.

COOPER, J., delivered the opinion of the court.

From the decree of the chancellor all the parties appeal.

The complainants in the court below assign for error, the action of the chancellor : —

1. In declaring the real estate to be partnership property.

2. In denying immediate partition to complainants.

3. In declaring the land subject to the debts of the partnership of Fizer & Folkes contracted after the death of Fizer and before the filing of the bill in this cause.

4. In fixing the beginning of the farming season of 1882, instead of the date of the filing of the bill (December 13, 1881), as the date of the termination of the partnership.

5. In disallowing the application of the heirs of Fizer for an allowance for support during the litigation, and for attorney's fees.

6. In modifying the injunction which had been issued, so as to permit Folkes to dispose of the crops of the year 1882, upon his entering into bond to have forthcoming the rents which might be assessed against him for that year.

7. In directing an account to be taken of the value of the improvements placed on the lands by Folkes after the filing of the bill.

8. In directing that Folkes should only be charged with interest at six per cent per annum instead of ten.

The appellant Folkes assigns for error the action of the court : —

1. In not enforcing the contract with Hilliard against the heirs of Fizer.

2. In not allowing the business of the firm of Fizer & Folkes to be carried on until payment could be made of all the partnership debts.

3. In not allowing Folkes to continue the business under the will of Fizer, until the place shall be improved and put in successful cultivation.

4. In appointing a receiver.

5. In holding appellant Folkes as a tenant for the year 1882.

6. In not allowing Folkes compensation for his services in managing the business after the death of Fizer.

7. In directing interest to be charged against Folkes in the settlement of the partnership accounts.

8. In not sustaining Folkes' plea of usury as to the Estes, Fizer & Co. account.

9. In construing the will of Fizer.

The appellant, Hilliard, by his first six assignments of error presents the same points raised by the first, second, third, fourth, fifth, sixth, seventh and eighth of Folkes.   The seventh is upon the refusal of the chancellor to instruct the commissioner that Folkes, upon an accounting, should be credited with one-half the value of one-third of the plantation.

8. In not declaring that the lien of complainants for whatever might be due from the defendant Folkes in order to pay the partnership debts and to equalize the accounts between the partners, should be postponed to any decree that Hilliard might thereafter obtain against Folkes on the contract of January, 1877, in the event Hilliard should elect not to accept the moneyed compensation allowed.

9. In requiring Hilliard to elect whether he would accept a moneyed compensation before the amount thereof had been determined, and before declaring how his right to proceed against Folkes under said contract would be affected by the lien claimed for complainants.

10. In not declaring that whatever rights Hilliard might have to enforce the contract of January, 1877, out of Folkes' moiety of the land, should be subject to only the partnership debts, and the indebtedness of Folkes as partner to complainants, which were existing on the 24th of January, 1877, and which had not been since paid, and that so much of this moiety, as might be afterwards decreed to Hilliard in any litigation with Folkes should not be liable to even such debts,

until Folkes' interest in all the other partnership property real and personal should first be exhausted.

It is unnecessary to consider *seriatim* the assignments of errors, as most of them are included in the examination of the general question which lies at the root of the controversy, which is, what was the character of the ownership which Fizer and Folkes had in the land?

As to the claim now propounded by the complainants, that the land shall be dealt with as property held under a tenancy in common, pure and simple, it would be sufficient to say that such was not the theory upon which their bill was exhibited.

But aside from this, an examination of the evidence showing the circumstances under which it was brought, the contract in reference to its improvement, the manner in which it was dealt with by the owners and the intimate connection it has with the partnership affairs, has led us to the conclusion that the land in no event could be considered as held by the owners as tenants in common, unaffected by the result of the partnership dealings conducted by them. On the other hand, the same considerations lead to the conclusion that the partners did not intend to reduce it to partnership property for all purposes, certainly not the extent of converting it into personalty.

There was contemplated by the owners a tenancy in common, but it was to fully begin only when the partnership should by finally closed. There was also a partnership, but it was to end, not in the conversion of the land into personalty for the purposes of distribution, but in the partition of it between the members of the firm, or a continuation of the enjoyment of it as tenants in common.

The powers, rights and obligations of the owners cannot be determined wholly by the laws of partnership, nor of those of co-ownership, but are governed partly by those of each. 1 Lindl. on Part. 63.

The contract of partnership was entered into solely for the purpose of purchasing, improving and equipping the place. The profits of the partnership business were to consist of lands and not of money ; as rapidly as realized they were converted into realty by investing them in the payment for, improvement and equipment of, the place.   The end and object of the partnership was the ownership of an improved and arable plantation.   The partnership was the means by which this end was to be attained.

The relations of the parties to each other and to the property are analogous to the cases of co-ownership of mines worked by the owners as partners.   As to these Lindley, in his work on partnership, suggests the following, among other rules : upon a dissolution of the partnership, the mine itself not being partnership property, must be divided between its several owners and not be sold.

As between the real and personal representatives of a deceased partner, his share in the mine will be real and not personal property.

With a view to a dissolution the court will, if necessary appoint a receiver to carry on the mine for the benefit of all parties interested.

The obligation of each co-owner to account to the others, is the same as that of one partner to account to his copartners, and much more extensive, therefore, than that which exists in a case of mere co-ownership.   The lien which each partner has on the shares of his copartners, for what is due from them to the partnership, extends to this class of cases, as does also the obligation which one partner is under to account to his copartners for benefits he may have received in respect of the common property.

From the facts shown by the record we consider, that the lands were partnership property in so far as to be bound for the debts which are binding on the firm of Fizer & Folkes ; that the partners were capable of dealing with them as partnership property, by doing any acts within the scope of the

partnership business; that on a dissolution of the partnership they pass to the heirs and not to the personal representative of Fizer, and that neither partner has the right to insist upon their sale for distribution of their proceeds; but that the heirs of Fizer are entitled to a partition in kind, if it can be made, which right is dependent upon a final settlement of the partnership accounts, until payment of which there can be no division of the lands, no withdrawal of them from the possession of the firm without the consent of all parties in interest.

This disposes of the first, second, third and fifth assignments of error on the part of the complainants in the court below. The second assignment of error on the part of the appellant Folkes is, that the court erred in not permitting the business of the firm of Fizer & Folkes to be carried on until payment could be made of all the partnership debts, and the seventh is that it was error to direct interest to be charged against Folkes in favor of the heirs of Fizer in the statement of the partnership accounts. These two assignments are based upon the terms of the partnership contract and are therefore considered together. There were no articles of partnership, but the admissions or declarations of both partners as to the terms of the contract are proved by two witnesses, who were the friends of the partners and conversant with their general business affairs.

Mr. Burton, one of these witnesses, says " it was understood and agreed, as explained to me by both of the parties, that Captain Folkes should take the management of the business in Tunica County, Mississippi, and attend to the raising of the crops, etc., and attend to all the other business transactions of the plantation; that General Fizer was to advance the funds necessary to carry on the farm, and to pay the purchase-money, and that they should continue their farming operations until the profits were sufficient to pay off the indebtedness of the firm." In answer to the next interrogatory, which was, " Were these moneys and means necessary to open and run and clear the place to be furnished by Fizer individually, or

by the house of Estes, Fizer & Co.," he says, "The money was furnished by Estes, Fizer & Co.; it was charged upon the books of Estes, Fizer & Co., to Fizer & Folkes."

Mr. Estes, the other witness, states: "My understanding from both was that the partnership was to continue until the debt was worked out and the place opened up, and as long afterwards as was agreeable. The purchase-money was to be made upon the land, and paid back until it was cleared of debt entirely."

On further examination Mr. Burton testified: "It was expected by both members of the firm, that the expense of clearing and improving the land would exceed the revenue of the place for the first two years or for an indefinite period. It was agreed, however, that the place should be cleared and they would continue to improve it, and that this extra expense should be borne by General Fizer, and as soon as the place became profitable, the money advanced by him should be refunded, and after the indebtedness of the place should be paid off, then they could divide the land or continue, as they saw proper."

In answer to cross interrogatory six which was: "Do I understand you to say that General Fizer was to furnish all the money that was necessary?" He replied, "That was the original contract. Captain Folkes put in some $3,000 cash, which he stated at the time, he had not expected to put in."

It is insisted by Folkes that by reason of the agreement of partnership thus proved, Fizer was unable to dissolve the partnership until the purpose for which the land had been purchased should have been accomplished, that it was a partnership for a definite and fixed end which both parties were bound by their agreement to carry into effect, and was indissoluble except by the consent of both.

In this view we can not concur. The law governing partnerships is that they may be dissolved at the will of either party unless there is a distinct covenant against the exercise

of this right, or unless it is manifest that such was the clear understanding and agreement of the partners.

Declarations of Fizer and Folkes, testified to by the witnesses, seem to us rather the expression of their views as to the probable result of the scheme, and the manner it could be consummated, than of the terms of a contract deliberately entered into by which they were to be bound to each other for, an indefinite time in an uncertain adventure. The agreement, if such it be, lacks those elements of certainty and completeness which ought to be established to engraft upon a contract of partnership so unusual a stipulation. Nor do we think the agreement on the part of Fizer to advance such sums of money, goods, etc., as should be necessary for the prosecution of the business, indicated an intention on his part not to charge interest for the use of the money or supplies so furnished. There is nothing in the evidence showing that he so understood it. As we have said in regard to the contra ct to continue indefinitely the business of the partnership, we cannot consider such an agreement as sufficiently proved by evidence of indefinite statements of a partner made in a casual conversation, or in explaining to a friend the general plan contemplated for the prosecution of the scheme in which he was engaged. We think it more than probable that Fizer understood the agreement to be that the common enterprise should not fail for lack of money, and that he was expected, as the moneyed man, to see to it that the necessary funds should be furnished by him or procured on his credit ; but that the cost of such advances, whether made by him or by another at his procurement, should be borne only by him and not by the firm, we think was not contemplated by him, nor fairly inferable from the agreement as stated by him to the witnesses Estes and Burton. By his first assignment of error the appellant, Folkes, presents the question whether the heirs of Fizer are bound by the agreement entered into between himself and the appellant Hilliard.

The power to bind the interest of the heirs in the land by this contract is claimed by him to have existed by reason of his power as a partner over the property of the firm.

The powers of the several partners over the property of the firm arise from contract between them, expressed or implied. In the prosecution of the common business it is usually necessary or expedient that each member shall have authority to act for all, and because of this general necessity, the authority, even between the partners themselves, is implied from the mere contract of partnership. It need not be expressly provided for, but exists unless expressly provided against. Arising by implication, it is restricted by implication, and can only be exercised by the performance of such acts as are necessary or usual in the business in which the partnership is engaged. It is admitted that there was no express authority conferred by the partnership agreement to make such contract; if, therefore, it exists at all it must be implied from the nature of the business. Now, the object of the partnership was the purchase, improvement and equipment of this land, not that it might be resold and a profit thus realized, but that it might be owned by the partners. If the power of alienation by each partner arose from the mere fact of partnership for one purpose, it arose for another; if there was authority to sell a part there must have been the same authority to sell the whole; if one partner could contract to convey a part to the manager employed in payment of his services, so also he might have contracted to convey another portion to the laborers who cultivated the fields or to the mechanic who built the houses upon the place. Such contracts could be made by neither partner alone, because they were not within the scope of the partnership business, and tended to destroy, not to advance the common scheme. But it is said that there was a necessity for the execution of the contract with Hilliard. The answer is, that the implied power of a partner does not arise from the necessity of a particular occasion, but from the contract of partnership. It is also said that a power exists in a

member of a partnership to sell the real estate of the firm for the payment of the firm debts; from which it is argued that a power also exists to contract a debt and at the same time to contract to pay it by a contract to convey the lands of the partnership in payment. The power to contract a debt implies the power to pay it, the power to pay implies the power to convert the property of the firm into money for this purpose, and the power to convert into money has been held to be substantially exercised by a conveyance of the property directly in payment of debts. In such cases the power of sale arises as an incident from the condition of the partnership affairs which has resulted from acts which the several partners had the power to perform. In this case the firm owed Hilliard nothing; there was no necessity for the sale of the lands of the firm; there was no general power in either partner to sell them, and there were no special circumstances from which an exceptional power could be inferred. Whether property purchased and held as this was, could in any event be sold by a member of the firm for the payment of debts, or for any other purpose, we do not find it necessary to determine, as the contract with Hilliard was confessedly not made for the purpose of paying the debts of the firm.

Again it is said that while the administrator and widow of Fizer did not actually sign the contract with Hilliard, they had notice of its existence and expressed no dissatisfaction with it; that they as the representatives of the estate of Fizer had the power to assent to the contract, and thus assenting to bind the heirs and estate of Fizer, and that their failure to object was equivalent to such assent. In our opinion, an execution of the contract by these parties would not in any degree have been binding upon the heirs or the estate of their testator. Whatever power they had must be deduced from the following clause in the will of Fizer: "It is also my will and desire, that my partnership matters with W. C. Folkes in the plantation and store in Mississippi be continued until the plantation can be properly improved and put in successful

operation, say for two years, and after that to go as the law directs.''

By this clause of the will, authority was conferred to continue the old partnership in the same general manner and for the same purposes as contemplated in the inception of the enterprise. Whatever was necessary to attain the desired end, whatever the individual members might have done before the death of Fizer without the knowledge or assent of the other partner might have been done by Folkes, after the death of Fizer, in prosecuting the partnership business under the will. But by the will no partnership was authorized to be carried on, other than the one existing at the death of Fizer. The executor or administrator could not enter into a new or different one; they could not change the terms of the partnership contract, so that from it as changed, greater or different powers might be implied than could have been from the original; they could not directly or indirectly, by consent, acquiescence or ratification give validity to any act for which authority did not exist by the terms of the contract as it existed at the death of the testator.

It is finally said in support of this contract, that admitting its invalidity as against the heirs of Fizer, yet, as it was made in good faith by Folkes, at a time when there was no prospect of relieving the firm from its embarrassed condition by other means, as it has been executed by Hilliard and resulted in benefit to the heirs, the court should now decree that it shall be executed by them. Waiving a consideration of the question whether, since the statutes of our State declare the contingencies under which the real estate of an infant may be converted into money, there remains any power in the court so to convert it, under other circumstances, we approve the action of the chancellor in declining to decree the execution of the contract under the facts of this case. Such contracts cannot be enforced, except where they are manifestly for the benefit of the infant. We are unable to say that it would in this case be to the advantage of the infant. Besides this, the *status quo*

may be virtually restored by the allowance to Hillard of a sum of money, to be paid out of the partnership assets.

The proposition that, by the will of Fizer, Folkes was authorized to continue the partnership for an indefinite time, or, as stated by him, until the place shall be, in the words of the will, "improved and put in successful cultivation," cannot be supported. First, because we think that at least such progress has been made in that direction (of improving and bringing into successful cultivation) as was contemplated by Fizer in making the provision in his will in regard to it; and secondly, because the administrator is entitled to demand a dissolution of the partnership. He is the representative of the estate of the testator, and it would be a strong case, indeed, in which the court would compel a continuation of a partnership in which the estate of a decedent was interested, against the wishes of its representative.

In view of the character of the partnership property and business, we approve the action of the court in appointing a receiver to take charge of and manage the affairs of the firm until the necessary accounting and settlement of the partnership can be made. There was no error in decreeing a dissolution of the firm, as of the beginning of the year 1882 and in charging Folkes as a tenant for that year. The complainants were entitled to a dissolution of the firm, and by resisting it Folkes could not continue the partnership against their consent. There is nothing in this that violates the rule which denies to a party having the election to take either the profits or the rents of property, the right of taking rents for a part and profits for a part of the time. The complainants filed their bill, electing to take the profits of the partnership, and demanding that it should instantly be dissolved and its affairs placed in the hands of a receiver. The defendant admitted their right to a participation in the profits, but asserted on his part the right to continue the partnership operations. In this claim he has been unsuccessful, and the result must be that the complainants are entitled to stand upon the same ground they

would have occupied if their lawful demand had been complied with. They cannot be compelled to take the profits of a partnership which they repudiate, and which was conducted without their consent and against their protest, because they elected to take the profits of the partnership while conducted by their consent and approval.

The chancellor rightly refused to decree the dissolution as of the date of the filing of complainant's bill. The business conducted by the firm was of an annual character, and for this reason the end of one and commencement of another farming year was a proper period to establish as that at which the dissolution should be made.

The injunction against the disposal of the crop of 1883 by Folkes was properly modified. Folkes being charged with rent and hire for the partnership property for that year, the crop became his individual property. Not belonging to the firm, the complainants have no lien on it for the payment of any amount which may be found due from Folkes to them on the settlement of the partnership accounts. Folkes' plea of usury should have been partly disallowed and partly sustained. As the estate of Fizer paid the debt as contracted by him, and since he gave no warning to its representative that he would object to the interest charged and paid, we think he ought not now to be permitted to cast the burden wholly upon the estate of Fizer. But the evidence discloses the fact that a part (probably one-third) of the usury was really received by the estate of Fizer, by reason of his interest in the firm of Estes, Fizer & Co. No injury can be done the estate by disallowing the usury to the extent that it was benefited by its collection. Directions to this effect should have been given by the court to the commissioner.

In view of the fact that Folkes' good faith, in his management of the partnership affairs, is fully shown by the evidence, we have hesitated in determining to deny him the right to receive compensation for services rendered by him subsequent to the death of Fizer; but in view of the facts that under the original agreement no charge could have been made

for services rendered in the life time of Fizer, that Folkes was the attorney who prepared the will of Fizer by which compensation was provided for Mr. Estes, the surviving member of the firm of Estes, Fizer & Co., for services to be rendered by him after the death of Fizer, and that the will, while referring to the continuation of the business of Folkes & Fizer, is silent as to compensation for services to be rendered by Folkes, and because also we have thought Hillard (who seems to have been the real manager of the planting interests of the firm) to be entitled to compensation on the basis hereinafter shown, we have not felt justified in decreeing compensation to Folkes.

The ninth assignment of error by the appellant Hilliard is well taken.

He should not have been compelled to elect between the reception of a compensation in money and the right to pursue Folkes on his contract until the account shall be taken, and the chancellor shall have declared what that amount will be. The account must of necessity be taken in any event, as the amount properly payable to Hilliard will be a charge on the partnership property in any event, in his favor if he shall elect to receive it, and in favor of Folkes, if Hilliard shall elect to proceed against him on the contract.

The eighth and tenth assignments of error by Hilliard are untenable. If he shall elect to receive compensation in money he will stand as a creditor of the firm, and his debt will be paid *pari passu* with those of the other creditors. But if he shall decline to receive such compensation, and shall elect to proceed against Folkes individually, he will be postponed as against the partnership property to all the creditors of the firm. At best, under such circumstances, he could occupy only the position of a purchaser of a part of Folkes interest in the partnership property, and what that interest will be cannot be determined until a settlement of all the partnership debts.

In taking an account of the amount which should be allowed the appellant Hilliard for services rendered to the firm, regard

should be had to the terms upon which he contracted to perform them ; that is,·that he was to receive only $500 per annum in cash, the balance being payable only at the ·end of the six years from the date of the contract, and the contingency that such balance would not be paid at all, except in the event the partnership should be successfully prosecuted.   He should be allowed a sum equal to that for which a man, capable of performing the services performed by himself, could have been employed by the firm of Fizer & Folkes to perform such services, at the time the contract was made, in the locality of the lands, receiving in cash annually the sum of $500, the balance of his compensation being payable at the expiration of the term of six years, and such payment of such balance being conditional upon the ability of the firm under his management of the property to pay off the debt secured by mortgage on the lands.

   The matters involved in the seventh assignment of error by the complainants have not been finally passed upon by the chancellor.   It was not error to refuse to charge Folkes with interest at ten cent per annum.

   The decree is reversed in so far as affected by the errors herein indicated ; as to all other matters it is affirmed.   The cause will be remanded to the court below for further proceedings, the costs of this court to be equally divided between the parties, and those of the court below to abide the result of the final decree.